# Fink *versus* Garman.

*Action by Widow against Innkeeper for Death of Husband caused by Intoxication.—Acts of April 15th 1851, May 8th 1854, and April 26th 1855, construed.*

1. Under the Act of April 15th 1851, a widow may maintain an action for damages against an innkeeper, for furnishing her husband liquor when intoxicated, in consequence of which he fell under the wheel of his wagon and was killed.

2. That act not only regulated a common law right of action, by securing to it survivorship, but created a new and original cause of action, unknown to the common law, in favour of a surviving widow or personal representative, who had no right of action before.

3. The right of action under the Act of 1851, was for the "unlawful violence or negligence" of the defendant; and by the Acts of May 8th 1854

[Fink *v.* Garman.]

and April 26th 1855, the giving or selling liquor to a man of known intemperate habits who was already intoxicated, was such "unlawful violence or negligence" as would render the innkeeper so doing, liable to respond in damages for any injury causing death, at the suit either of the widow, children, or parents of the decedent.

4. After the Act of 1854, the furnishing of liquor to an intemperate man, which was before that time unlawful under the laws of Pennsylvania, would clearly be an act of "unlawful negligence," within the meaning of the Act of 1851.

5. The act of the decedent in taking the liquor offered to him while intoxicated, is not such concurring negligence in him as would relieve the defendant from liability in damages; for it was not a responsible concurrence, and the Act of 1854, which makes it a misdemeanor to furnish an inebriate liquor, does not make the drunkard responsible for accepting the furnished liquor, nor take any notice of his act whatever.

6. It is not the party whom the inebriate injures, only, who can sustain an action for damages under the statutes: by the Act of 1854, "any person aggrieved" may sue, and the widow is a person "aggrieved" by the death of her husband, by the Act of 1855, under which she has her action.

7. Public policy and the statute law of Pennsylvania alike forbid that liquor should be furnished to one who is either at the time intoxicated, or who is habitually intemperate, though not presently intoxicated.

ERROR to the Common Pleas of *Lebanon county.*

This was an action on the case brought January 9th 1860, by Rebecca Garman, widow of Jacob Garman, against Jacob Fink, who was a public-house keeper, to recover damages for having caused the death of her husband, by unlawfully furnishing him with intoxicating liquors.

The declaration contained several counts, and averred that the defendant, a licensed innkeeper, contrary to his duty, furnished intoxicating drink to Jacob Garman, the husband of the plaintiff, and that in consequence thereof he became drunk, fell from his horse, and lost his life; but it was not alleged in the declaration that Garman was of known intemperate habits, or that he was drunk or intoxicated when the liquor was furnished to him by defendant, or that the liquor was furnished to him in violation of any act of the General Assembly of Pennsylvania. The defendant pleaded not guilty.

On the trial, the defendant below requested the court to instruct the jury—

1. The 3d section of the Act of the General Assembly of this Commonwealth, approved the 8th day of May 1854, does not embrace this case, and the plaintiff (being the widow of Jacob Garman, the person who it is alleged lost his life in consequence of the liquor furnished to him by the defendant) cannot recover.

2. That the drinking of the liquor furnished by the defendant to Jacob Garman, at his instance and request, and by the drinking of which Jacob Garman, the husband of the plaintiff, it is alleged became intoxicated and lost his life, was the act of Jacob

[Fink *v.* Garman.]

Garman, and is itself in law an act of negligence *per se* on his part, and the plaintiff cannot recover.

3. That if the defendant and Jacob Garman were both guilty of negligence—the former in furnishing the liquor, and the latter in drinking it—the plaintiff cannot recover.

4. That the plaintiff cannot sustain an action at common law for the injury complained of, nor is a remedy given therefor by the Acts of Assembly of this Commonwealth, and therefore the plaintiff cannot recover.

5. That if the plaintiff can sustain this suit, she must show affirmatively, by clear and satisfactory proof, that the liquor which the defendant furnished to Jacob Garman, her husband, was the cause of his death, and if she cannot do this the verdict of the jury must be in favour of the defendant.

The court below (PEARSON, P. J.), after stating the main facts of the case, charged the jury as follows:—

[" Taking these to be the facts of the case, the first question to be determined is, can the plaintiff sustain an action ?

" Prior to the year 1851, it is very clear that no action would lie on account of the death of any one : personal rights and remedies died with the person, and those injured by the death of relatives, or even masters for the loss of servants, could have no pecuniary redress. The common law accepted no compensation for the deprivation of human life. The only punishment for its destruction was to be found in the criminal law.

" By the 18th section of the Act of 15th of April 1851, it is provided, ' That no action hereafter brought to recover damages for injuries to the person by negligence or default, shall abate by reason of the death of the plaintiff, but the personal representatives of the deceased may be substituted as plaintiffs, and prosecute the suit to judgment and final satisfaction.'

" The 19th section declares, ' That, whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or, if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned.' It is contended that this action will not lie, as the act complained of does not arise from ' *unlawful violence* or *negligence,*' and being in the nature of a penal statute should be construed strictly. We are of a different opinion, and look upon the statute as highly remedial, and therefore should be liberally beneficially expounded. The evil existing before the passage of the act, was, that it mattered not by what negligence, default, unlawful violence, or other violation of law a person was deprived of life, or however great the injury to the surviving relatives, there was no remedy. The husband could not sustain an action for the loss of the society

4 WR.—7

[Fink *v.* Garman.]

of his wife, or the service and companionship of his children, the wife for the loss of maintenance and protection through her husband, and the legislature intended to give a full remedy. Through the great carelessness and want of skill in those who prepare our statutes, we are often left to grope almost in darkness for their meaning, yet we cannot believe that it was intended by the variance of words in the 18th and 19th sections to give a remedy in the one case which is withheld in the other. That where a party sued in his lifetime a recovery could be had by his substituted representatives for his death arising '*by negligence or default*,' and where the suit is brought after his death, it must be caused '*by unlawful violence or negligence.*' In our opinion, the legislature meant the same thing in both cases. Our lexicographers teach us that '*default*' means '*a failing or failure,* or defect,' 'neglect to do what duty or law requires.' We should have no hesitation in saying, that, under the 18th section, if a party would do an act in violation of law, or neglect to do what the law required, by which another should be deprived of life, it would be through his '*default*,' and therefore an action would lie. Or the suit commenced in the lifetime of the injured party could be prosecuted to judgment after his death, although the injury arose from an unlawful act of violence. And to say that if the deprivation of life was immediate, by which no action could be brought in his lifetime, there would be no remedy, would be to *stick in the letter*, losing sight of the main object of the statute. The expression used in the 1st section of the Act of 1855, limiting the right of recovering damages to those who stand in certain relations to each other, still further tends to show the legislative meaning, 'persons entitled to recover damages for *any injury causing death*,' from which we may infer that the legislature understood the action could be sustained for *any injury* by which another should be deprived of life. We feel ourselves, therefore, at liberty to apply the remedy to any *unlawful act done by a party, resulting in a fatal injury to another, whether attended with unlawful violence* or *negligence* or through *default* of performing a duty required by law.]

"It is complained here that the defendant wilfully furnished the plaintiff's husband with intoxicating drinks as a beverage, he being of known intemperate habits, and also intoxicated at the time, and that his death was caused by reason thereof. You must determine from the evidence whether Jacob Garman was a man of intemperate habits, and, if so, whether those habits were known to Jacob Fink when he furnished him the intoxicating liquor, or whether Garman was intoxicated when Fink furnished him the last glass of gin, and also whether his intoxication caused him to fall from his horse, by reason of which he lost his life. [If you are satisfied that Garman was of intemperate habits, and

[Fink *v.* Garman.]

the same was known to Fink, or that Garman was drunk or intoxicated when Fink gave him the liquor, and by reason thereof fell from his horse and was killed by the wagon wheel, Fink is answerable to the widow for the damages sustained by herself and family], to be estimated on the principles we shall explain hereafter. Even independent of the 3d section of the Act of the 8th of May 1854, we are inclined to think the action could be sustained, provided the defendant furnished the intoxicating liquor to Garman in violation of the first section, and thereby caused his death. He would be guilty of a violation of law to the *injury* of another, and be in default in the performance of his duty. But the 3d section provides, ' That any person furnishing intoxicating drinks to any other person in violation of any existing law, or of the provisions of this act, shall be held civilly responsible for any injury to *person or property* in consequence of such furnishing; and any one aggrieved may recover full damages against such person so furnishing by action on the case in any court having jurisdiction of such form of action in this Commonwealth.' [It is contended that this section is only intended to give redress to those whose persons or property are injured by the act of the drunken man.

" We think it will admit of a much more extended construction. That it includes injuries done to the drunkard's family through the death of the man himself. If a person, with full knowledge that another is destroying himself by the use of intoxicating liquors, will furnish him with the forbidden article, by which a fit of *mania-a-potu or delirium tremens* is superinduced, and in consequence thereof the drinker dies, his relatives, within the Act of 1855, are not without remedy, but can support an action under the statute.] So if in consequence of becoming intoxicated he should lie out of a winter's night and perish with the cold. The framers of the law used general expressions to convey their meaning, and doubtless had in view the other statutes which give a right of action in case of a person's death through the illegal conduct of others. [It is, however, argued that it would present a case of mutual negligence, a violation of law by agreement, and hence no action could be sustained. We may observe in the first place that it is not in favour of the party violating the law that the action is brought, and therefore the maxim of *volenti non fit injuria* has no application, and in the second that our various laws treat the person of intemperate habits as incapable of taking care of himself or resisting his propensities, and therefore punishes not him, but those who administer to his appetite.

" Was Jacob Garman drunk or intoxicated at the time Jacob Fink furnished him with the last glass of gin ? If he was, the supplying him with it was an unlawful act, and if it caused his death Fink is liable in this action. Was Garman of known

[Fink *v.* Garman.]

intemperate habits?  If he was, and those habits were known to
Fink, it was unlawful for the latter to supply him with any
intoxicating drink whatever, and if his death was caused thereby
this action can be supported."]

Here the court called the attention of the jury to the evidence
of Garman's situation on the day of his death, and during the
time he was drinking at the tavern, the quantity drank, &c., and
also to his habits as known in the neighbourhood, and then pro-
ceeded :—

"From this evidence, are you satisfied that Garman was of
intemperate habits?  Were those habits known to Fink?  Where
a man is of notoriously intemperate habits, and that known through-
out the neighbourhood, the jury must judge whether those habits
were known to the keeper of a public-house which he frequents
almost daily.  It is a question of evidence, and, like many other
matters, cannot always be established by direct proof, but must
be made out from circumstances.  We may very fairly presume
that the tavern-keeper knows the habits of the drinking men who
frequent his house quite as well, or better, than they are known
to the sober men of the neighbourhood, and he is not permitted
to fold his hands and close his eyes to what is going on around
him.  It is, however, a question of fact for the jury.

"There can be no question as to the liquor being *wilfully*
furnished; it was not given by *accident*, but *intentionally*, which
is the obvious meaning of the Act of Assembly.

"You must be satisfied that intoxicating drink was unlawfully
furnished by Jacob Fink to Jacob Garman, and also that it
caused his death.  It is contended on the part of the defendant
that Garman was subject to fits of dizziness, and fell from his
horse in consequence of a fit.  You have heard the evidence of
his statements, and also the admissions of his widow, and must
judge from those, and also the testimony of his neighbours,
whether anything of the kind existed.  If he fell from his horse
in a fainting fit, the defendant is not liable to an action, unless
you are satisfied that the fit was caused by the intoxicating drink
which he had obtained from Fink.

"We are requested by the defendant's counsel to instruct you
that this action cannot be sustained in the name of the plaintiff
alone, but Garman's children should have been joined as parties.
The 19th section of the Act of 1851 clearly gives the right of
action to the widow of the deceased person, and we cannot see
anything in the Act of 1855 taking away that right, or even
changing the form of action.  The 2d section of the act re-
quires that the declaration shall state who are the parties
entitled to the damages; but we are of the opinion they are to
be named for the purpose of properly distributing the damages
when recovered.  The widow could recover for her own injury
under the former statute, and as a trustee for her children under

[Fink *v.* Garman.]

the latter, they being named in the *narr.* They need not in any other way be made parties to the suit.

" If then you shall be of the opinion from the whole evidence, that Jacob Garman was a man of intemperate habits, and that known to Jacob Fink, or that Garman was drunk or intoxicated at the time Fink furnished him the liquor, and that Garman's death was caused by drinking the liquor thus furnished, the cause of action is made out; and the next inquiry is as to the amount of damages, if any, which the plaintiff is entitled to recover.

" The jury must estimate the damages by a pecuniary standard alone,—the loss to his family in a pecuniary point of view,— nothing can be allowed by way of *solatium*, that being incapable of a pecuniary estimate. Nothing for grief, loss of society, protection, or companionship, but what would he have probably earned in the residue of his lifetime, which would have gone to the benefit of his wife and children, taking into consideration his age, ability to labour, and habits? There are cases where a different measure of damages might be allowed. If a dealer in liquor would persist against light and knowledge, and the law of the land, in furnishing the means of intoxication to one who was obviously destroying himself, and by reason thereof he would eventually perish, a jury might properly give exemplary, or even vindictive damages. But when the danger is less obvious, and the intoxicating drink furnished without any evil design, or expected injury, compensatory damages alone must be allowed, to be measured by the pecuniary loss only. And probably the jury would conclude that no great injury was anticipated in the present case. That is, however, a question for you, and the whole case is submitted to your careful consideration."

Under this charge there was a verdict and judgment in favour of plaintiff, on four of the counts in plaintiff's declaration, for $254.25. The defendant thereupon sued out this writ, and assigned here as cause for reversal, that the court below erred,

1. In not answering the points submitted by the defendant on the trial.

2. In charging the jury as above stated (viz., that portion of the charge included within brackets).

*Levi Kline* and *Josiah Funk*, for plaintiff in error, contended, that no action would lie for the injury complained of. That this suit was professedly founded on the first and third sections of the Act of May 8th 1854, one of which subjects the party violating its provisions to criminal, and the other to civil liability for any injury to person or property in consequence of violating the first section. If Garman, while intoxicated, had committed an injury, the defendant would have been liable if he had

[*Fink v.* Garman.]

furnished the liquor which produced the intoxication, which is
not objectionable; but that the inebriate who is as culpable in
taking, as the other party is in giving the liquor, should have a
remedy against the landlord for any injury which he may suffer,
would be most unjust. The legislature should have said so if
this was their intention. The usual rules of construction will
not warrant this interpretation of the statute. Garman stood in
*pari delicto.* If living he could not maintain this action, and his
widow stands in no better situation: Pennsylvania Railroad
Company *v.* Ogier, 11 Casey 71. Even if he could, the action
does not survive. The court below held that it did survive by
virtue of the 18th and 19th sections of the Act of April 15th
1851, but these sections apply only to injuries that were action-
able at common law, and which without them would have abated
on the death of the injured party. They do not extend the
jurisdiction of the common law, making that actionable which
was not so before. The act was passed three years before the
act, making parties liable for injuries resulting from the sale of
intoxicating drinks. It has, therefore, no application. All
injuries not actionable at common law, therefore die with the
person. The terms "negligence and default" in the 18th section,
means the "unlawful violence or negligence" mentioned in the
19th section. The former section *preserves* the action where the
suit was commenced in the lifetime of the injured party—the
latter *gives* an action where none was commenced in the lifetime
of the injured party, where the death has resulted from "un-
lawful violence or negligence."

Nor does the Act of April 26th 1855, give a new cause of
action for injuries causing death, but only limits the parties who
are entitled to sustain an action under the previous acts to the
husband, widow, children, or parents of deceased.

*John Weidman* and *John C. Kunkle,* for defendant in error.—
The legislation on which this action is founded, will be found in
the 18th and 19th sections of the Act of April 15th 1851, P. L.
674; the 1st and 3d sections of the Act of May 8th 1854, P. L.
663, and in the 1st section of the Act of April 26th 1855, P.
L. 309.

The Act of April 15th 1851 gives a new right of action, which
must of course be controlled and tried according to common law
rules of evidence and practice, although founded solely on the
statute. This right, given generally in 1851, is the remedy for
the injury defined in the Act of 1854, on which this action is
brought. The 1st section declares the wilfully furnishing in-
toxicating drinks as a beverage to a person when drunk or
intoxicated, unlawful. That this was done by the defendant
below the jury have found. The 3d section renders persons

doing this, civilly responsible for any injury to person or property in consequence of such furnishing. Here the jury have found that plaintiff did sustain an injury in the loss of her husband. The charge of the court below renders further argument unnecessary.

The opinion of the court was delivered, July 24th 1861, by

WOODWARD, J.—What this case was upon the pleadings, we are not informed, for they have not been exhibited. But from the charge of the judge, we learn that it was an action on the case, brought by the defendant in error, as widow of Jacob Garman, deceased, against Jacob Fink, the plaintiff in error and defendant below, for furnishing to the said Garman, a man of known intemperate habits, and at a time when he was intoxicated, an additional quantity of intoxicating liquor, by which he became so inebriated that he fell from his horse under the wheels of his wagon, and was instantly killed. Fink was a licensed innkeeper.

The action is grounded on the 19th section of the Act of Assembly of April 15th 1851, that gives to the widow, or personal representative of a decedent, an action for damages when the death of the decedent is occasioned by "unlawful violence or negligence." The 18th section provides, that no action brought by the person injured by the "negligence or default" of another, shall abate by reason of the death of the plaintiff, but shall survive to his personal representative.

Counsel insist that these sections were not intended to create any new cause of action unknown to the common law, but only to prevent the abatement of personal actions, according to the common law maxim, *Actio personalis moritur cum persona.*

The 18th section was apparently intended to regulate a common law right of action, by securing to it survivorship; but the 19th section was creative of a new cause of action, wholly unknown to the common law. And the right of action was not given to the person suffering the injury, since no man could sue for his own death, but to his widow or personal representative. It was not survivorship of the cause of action which the legislature meant to provide for by this section, but the creation of an original cause of action in favour of a surviving widow or personal representative. It was quite competent for the legislature to alter the common law in this regard. They did so by giving parties a right of action who had none before. To give the section the restricted construction suggested in the argument, would be to repeal it, for no such action as the present could pre-exist to survive the death of the injured party.

The widow's right of action, therefore, would seem to be unquestionable, if her husband's death was occasioned by the

"unlawful violence or negligence" of the defendant.   Was it?
In other words, was it unlawful negligence for the defendant, an
innkeeper, to give or sell liquor to a man of known intemperate
habits, who was already intoxicated?   The court below thought
it was, for reasons that are fully set forth in the charge, and we
are inclined to concur with the learned judge.

The 8th section of the Act of May 8th 1854, Pamph. L. 663,
makes it a misdemeanor, punishable by fine and imprisonment,
to furnish intoxicating drinks to a person of known intemperate
habits, or to any person when drunk or intoxicated.

The 3d section of the same act subjects the offender to civil
liability for any injury to person or property, in consequence of
such furnishing, and any one aggrieved may recover full damages.

And by the 1st section of the Act of April 26th 1855, Pamph.
L. 309, widows, children, or parents may recover damages for
any injury causing death.

Such are the statutory restraints and liabilities under which
innkeepers and all others are placed in respect of persons known
to be intemperate, and of persons presently intoxicated.   Accord-
ing to the evidence Garman answered both descriptions.   He was
well known to Fink as a person of intemperate habits, and as a
person at that moment intoxicated.   Yet Fink gave him more
liquor.   To do so was to commit a public misdemeanor—to make
himself liable in damages for any injury Garman should inflict
on the person or property of another by reason of the additional
glass—and if that last drink was the proximate cause of his own
death, then the statute gave the widow a right of action also
against Fink.   What but unlawful negligence was it thus to
wantonly violate the dictates of common prudence—offend crimi-
nal and civil statutes, and bring on himself such various penal-
ties?   No standard of social duty, or of obedience to law, can
be applied to Fink's act which will not prove it to have been in
a very eminent sense unlawful negligence.

But, say counsel, these statutes were subsequent to the Act of
1851, which gave the widow her action, and the cases which the
later statutes provide for are not within the purview of the
former.

The answer is, that the Act of 1851 gave the action for two
generic causes—unlawful violence and negligence—but the legis-
lature defined neither violence nor negligence.   Be it that the
courts would not have so defined these words as to embrace the
defendant's act, yet it was competent for a subsequent legisla-
ture to enlarge the circle of unlawful deeds, and to make wrong-
doing, like that of the defendant, culpable negligence.   They
did so.   They told the defendant plainly what might be the con-
sequences of his furnishing liquor to Garman, and among them
was liability to the suit authorized by the Act of 1851.   The

[Fink *v.* Garman.]

more recent the admonition the less excuse there was for forgetting it.    It would probably be found, if it were worth while to go into an examination of all prior legislation, that it never was lawful, but always unlawful negligence in Pennsylvania to furnish liquors to men actually drunk at the time, or known to be habitually intemperate.   The licensing of innkeepers was founded on the obligation of a civilized community to provide places of rest and refreshment for strangers and travellers, and a monopoly in the traffic of liquors by small measure was the reward which the public offered to individuals who would incur the trouble, and maintain the arrangements necessary to discharge this duty of hospitality to strangers and travellers.   It was for strangers and travellers taverns were licensed—not for idlers and tipplers of the neighbourhood.   And it would probably be found, I repeat, from a comparison of all the Acts of Assembly, that it was as clearly unlawful in 1851 to furnish liquor to an intemperate neighbour as it was after the legislation of 1854 and 1855—so that no room would exist for the distinction taken in the argument.    But it is unnecessary to rest the answer to the argument on this ground, because, however it was before 1854, it is clear beyond all reasonable doubt that the legislation of that year made the furnishing of liquor to an intemperate neighbour an act of "unlawful negligence" within "the meaning" of the Act of 1851.

Again : counsel suggest that the only civil action to which the statutes subject the offender is such as may be brought by a party whom the inebriate injures.   Not so.   The argument loses sight of the large and comprehensive terms of the statutes.   "Any person aggrieved" may sue, says the Act of 1854, and "for any injury causing death" the widow has her action by the Act of 1855.   Now, that a widow is a person aggrieved by the injury or death of her husband is a conclusion of law which rests, not upon the sudden sundering of the most interesting relation of human life, but upon the pecuniary advantages which she loses thereby.   Her right of support from his industry—her right of dower from the accumulations of his life—give her a fixed pecuniary interest in his existence.   The loss of his society—of his assistance in rearing children, and managing whatever estate they may have, and the consequent labour and trouble that are devolved on her—are not these circumstances to *aggrieve* her ? I do not mean by this question grief of the affections, but injury of the pecuniary interests of the wife.   It is the wound of these lower and more sordid sensibilities the law undertakes to heal. Its hand is too rough to mend a broken heart.   The legislature have adjudged her entitled to compensation in numbered moneys from him who brings these losses and inconveniences upon her by unlawful violence or negligence.   The jury in this case were

[Fink *v.* Garman.]

properly restrained to the consideration of her pecuniary rights in assessing the damages.

One other suggestion of counsel should be noticed. It is said that if Garman's death resulted from the act of the defendant, his own negligence concurred in producing it, and hence no action arose. When the death is the result of concurring negligence, I do not see how it can with truth be so referred to the unlawful negligence of the defendant as to make him liable. The death to be answered for in damages must be the direct, though it need not be the immediate result of the wrongful act of the party charged. His act must be what we call the proximate cause of the injury complained of. If the proximate cause was compounded of his act, and the unlawful act of the decedent, the civil remedy is gone.

But how does this doctrine apply here? Garman was already intoxicated. Then he was incapable of legal acts. He was like an idiot, or a child of tender years, and to such cases the doctrine of concurring negligence is inapplicable. Not only was he incapable of exercising sound discretion, and therefore is not to be held to its exercise, but his condition was notice to Fink— was an appeal to his humanity—was such as to make his violation of the statutes more palpably unlawful negligence.

If, therefore, Garman was precipitated from his horse under the wheels of his wagon by reason of Fink's deliberate wrongdoing (and of this the jury must have been satisfied before they could find for the plaintiff), the turpitude of Fink's act is not to be abated, but rather increased by such concurrence as he obtained from the inebriate. It was not a responsible concurrence. It does in no degree relieve Fink's liability. The parties were not on equal footing, and it would be a great misjudgment to hold them equally responsible for what was done. The Act of 1854, which makes it a misdemeanor to furnish an inebriate liquor, takes no notice whatever of the drunkard's act in accepting the furnished liquor. This marks the distinction which every man's moral sense feels to exist between the acts of the parties.

We have noticed sufficiently the objections urged against the ruling below. We care not how distinctly it is understood by all who deal in intoxicating drinks, that not only public policy but statute law forbids that they be furnished to him who is intoxicated, or who is habitually intemperate, though not presently intoxicated. There is no excuse for ignorance or mistake where the law is so plainly written. If men will disregard it they must accept the consequences. As the judicial tribunals did not make the law, they have no power to lessen its exactions, and, looking to the humane purposes of the legislation, they have no disposition to thwart it by glosses and refinements.

The judgment is affirmed.