## FRANK N. TAYLOR v. CLARISSA WRIGHT.

ERROR TO THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 6, 1889—Decided May 27, 1889.

In a civil action for damages, under § 3, act of May 8, 1854, P. L. 663, charging the defendant with having caused the death of plaintiff's husband by unlawfully furnishing him with intoxicating liquors, if the jury find that the defendant furnished the deceased with liquors, while intoxicated, with knowledge that he was a man of known intemperate habits, he is responsible for the resulting injury, even though others furnished him with liquors on the same occasion.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 444 January Term 1888, Sup. Ct.; court below, No. 139 February Term 1886, C. P.

On January 21, 1886, Clarissa Wright, widow of Pardon Wright, deceased, brought case against Frank N. Taylor, to recover damages for having unlawfully furnished her husband with intoxicating liquors, resulting, as alleged, in his death. The action was brought under § 3, act of May 8, 1854, P. L. 663.

At the trial on October 27, 1887, the case shown by the testimony was in substance as follows:

The defendant was a licensed hotel keeper in Smethport, and on October 22, 1885, was absent in Buffalo, N. Y. His regular bar-keeper was also absent, and the bar was left in charge of the hotel porter, George Squires. On that day, Pardon Wright was in Smethport and drank at Taylor's hotel. There was cumulative testimony to show that Wright was a person of known intemperate habits. The defendant, however, testified that he did not know this fact, and the porter, Squires, testified that he did not know Wright at all, and did not sell to any one who was intoxicated. There was also testimony that Wright had drunk liquor at another hotel in Smethport and that he carried a bottle of some kind of liquor and drank from it that day.

After he left Smethport, Wright went to his home about 3½ miles distant. Soon after he reached home he went to his barn, and thence to his hay-mow. He was next found upon the floor of his barn, severely injured by a fall from the mow. He was removed to his house, and helped to bed. The following day he died. There was testimony from which the defendant contended that the direct cause of his death was excessive hypodermic injections of morphia administered by his physician.

At the conclusion of the testimony, the court, OLMSTED, P. J., charged the jury, in part, as follows:

We have been requested by counsel for the defendant to answer certain points to the jury which have been submitted to us in writing, and we will do so now.

      *      *      *      *      *      *      *      *

3. That if the deceased, on the day he was injured, obtained

liquor from others than the defendant as well as from the defendant, and the jury is unable to determine which was the proximate cause of his death, the plaintiff cannot recover.

Answer: We cannot affirm this point in just the language in which it is clothed. To affirm it just as it stands would be, as we understand it, in effect, to make the whole legislation upon this question nugatory and of no account whatever, because we cannot shut our eyes to the fact that in nine cases out of ten of this character the person who purchases the liquor purchases it in more than one place. It could hardly be the law that a man could furnish liquor to a person until he was in an extreme state of intoxication, and great injury arise to some one thereby, and avoid the effect of the legislation upon the subject by simply saying that the plaintiff may have purchased a drink or drinks of some other person that mingled with the liquor which he drank of the defendant. But we answer this point in this way:

In answer to this point we say to you that if you believe from the evidence that the defendant sold whiskey to the deceased, Wright, knowing that he was a person of intemperate habits or that he was intoxicated at the time of the sale, whatever his habits may have been, and that his death followed from and was caused by his intoxication, you may find that the act of the defendant was the proximate cause, although you should believe from the evidence that the deceased got whiskey from other persons on that day.[1]

\* \* \* \* \* \* \* \*

It is the theory of the plaintiff that this fall and death were caused by the sale of intoxicating liquors to him by the defendant and that therefore it was the act of the defendant in selling him the liquor that was the proximate cause of his death. What was the cause of his death?

\* \* \* \* \* \* \* \*

I do not undertake to call your attention to the details of evidence in this case, and name the witnesses who have testified as to each disputed fact. You will recollect there is evidence that Wright had a bottle of whiskey that afternoon, and some evidence that he drank at the Rockwell House; there is also evidence by the bar-tenders and others at the Rockwell House that they did not sell him liquor, but refused to do so. You

will judge of the credibility of the witnesses who have testified upon this, as upon all other questions in the case. We say to you that if you believe from the evidence that Wright was a person of known intemperate habits, and that the defendant by his agents or employees, so knowing, intentionally sold him intoxicating drinks on the afternoon in question, that this sale was the proximate cause of his death, then your verdict should be for the plaintiff; or, if you find that Taylor by his employees or agents sold Wright intoxicating drinks while intoxicated, and knowing him to be intoxicated at the time, whatever his habits may have been, and his death resulted therefrom, then the plaintiff is entitled to recover. If you do not find one or both of these assumptions to be true, your verdict would be for the defendant.

If Mr. Taylor has sold intoxicating drinks unlawfully to persons to whom he could not sell under the authority conferred upon him by his license, and therefore has caused injury and damage, he cannot complain if called upon to make good the injury so far as he can do so by the payment of money. The defendant had no right by his license to sell liquor to a person while drunk, or to a person of known intemperate habits, and if he did so intentionally sell, it was a violation of the law, and if it caused death or injury to another he would be liable to respond in damages for the injury. The act of assembly provides that "any person furnishing intoxicating drinks to any person, in violation of any existing law, or the provisions of this act, shall be held civilly responsible for any injury to persons or property in consequence of such furnishing, and any one aggrieved may recover full damages against such person so furnishing, by action on the case in any court having jurisdiction in such cases in this commonwealth."

If death follows, the surviving widow is a person aggrieved, and may recover her damages.

[I cannot, in this connection, forbear a quotation from the opinion of one of the most eminent judges of this commonwealth, now deceased, delivered in a case like the one at bar. "I care not how distinctly it is understood by all who deal in intoxicating drinks, that not only public policy but statute law forbids that they be furnished to him who is intoxicated, or who is habitually intemperate though not presently intoxicated.

There is no excuse for ignorance or mistake where the law is so plainly written. If men will disregard it, they must accept the consequences. As the judicial tribunals did not make the law, they have no power to lessen its exactions; and, looking to the humane purposes of the legislation, they have no disposition to thwart it by glosses and refinements."] [2]

The jury returned a verdict for the plaintiff for $100. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this writ, assigning as error:

1. The answer to defendant's third point.[1]
2. The part of the charge included in [ ] [2]
3. The giving, in charge to the jury, undue prominence to the testimony of the plaintiff's witnesses, and in failing to bring to the notice of the jury the evidence chiefly relied upon by the defence; particularly in failing to direct the jury's attention to the testimony of experts offered to show that the proximate cause of death was the improper administration of morphine by the attending physician.

*Mr. J. M. McClure* (with him *Mr. Mullin* and *Messrs. Backus & Gorton*), for the plaintiff in error.

*Mr. M. F. Elliott* and *Mr. J. W. Bouton*, for the defendant in error were not heard.

Per Curiam:

If Pardon Wright, whose death gave rise to the present controversy, was a man of known intemperate habits, and the defendant below, with others, furnished him liquor while intoxicated, and with knowledge of his habits, I do not see why they are not all responsible for the accident which resulted therefrom. In such case, it would be impossible for the jury to say which particular glass of liquor was the proximate cause of his death. Each glass did its share of the work. We do not see, therefore, any error in the answer of the court to the defendant's third point. As was well said by the learned judge: "To affirm it just as it stands would be, as we understand it, in effect to make the whole legislation upon this question

nugatory and of no account whatever, because we cannot shut our eyes to the fact that in nine cases out of ten of this character the person who purchases the liquor, purchases it in more than one place." Nor do we think it was error in the court below to repeat to the jury the language of Justice WOODWARD in Fink v. Garman, 40 Pa. 95. It was good law as well as good morals, and its application to this case could have done the defendant no legal injury. The last assignment is without merit.

Judgment affirmed.