## CAROLINE DAVIES v. F. McKNIGHT ET AL.

### APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 3, 1891—Decided January 4, 1892.

(*a*) In an action for causing the death of a person by unlawfully furnishing liquor to him, the testimony tended to show that the deceased, in consequence of intoxication so caused, fell into a gutter of water and became thoroughly chilled ; that he at once became sick, exhibiting symptoms of bronchitis, and after two or three days symptoms of pneumonia :

1. The immediate cause of death being the pneumonia, and there being medical testimony tending to show that the exposure would be likely to cause pneumonia, the question of proximate cause was for the jury, who were to determine whether the pneumonia was the result of the exposure, and the consequence, by continuous causation, of the furnishing of the liquor.

2. Under the Pennsylvania statutes* a widow may maintain an action for the death of her husband against one who caused it by furnishing to him liquor, he being of known intemperate habits or being at the time visibly intoxicated; and the husband's voluntary taking of the liquor, in these circumstances, is not such contributory negligence as will prevent her recovery.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 244 October Term 1891, Sup. Ct.; court below, No. 171 July Term 1890, C. P. No. 2.

To the first Monday of May, 1890, Caroline Davies, in her own right as widow of Robert Davies, deceased, and for the use and benefit of John Davies and others, minor children of said .deceased, brought trespass against Felix McKnight, Bridget McKnight, James Quinn and Peter Quinn, to recover damages for the death of said Robert Davies, caused, as was averred, by the unlawful and negligent selling, giving and furnishing by the defendant Felix McKnight, and by the other defendants acting as his employees, of intoxicating liquors to the said Robert Davies, he being a person of known intemperate habits, and being at the time of such selling, giving and furnishing, visibly affected by intoxicating drinks. The defendants pleaded not guilty.

At the trial on April 30, 1891, the testimony for the plaintiff tended to show that Robert Davies had for some time prior to his death been a frequenter of the saloon kept by Felix McKnight, at No. 998 Second Avenue, Pittsburgh, and was known by the defendants to be a person of intemperate habits; that he spent a large part of the day, on October 25, 1889, drinking in that saloon, and became very much intoxicated; that he was furnished additional liquors by some of the de-

* See the statutes and authorities cited in behalf of the appellee, post, 617.

fendants after becoming visibly affected by intoxication ; that, shortly before eleven o'clock on the evening of that day, he left the saloon in company with his son-in-law, Fred. Turnbull, who undertook to take him home, he being unable to walk alone ; that, while they were on their way, Davies fell and rolled into the gutter at the roadside, Turnbull being unable to hold him up ; that it was a cold evening, and the gutter was full of water ; that Davies lay in the water for some time, Turnbull being unable to get him out of it until assistance was procured, the result being that the clothing of Davies was saturated with water and he was thoroughly chilled ; that he was then taken home, reaching his house about an hour after leaving the saloon, and was put to bed, where he remained until his death on November 2, 1889, of pneumonia. Dr. Everson, the attending physician, testified for the plaintiff that the witness was called to attend the deceased, on the afternoon or evening of October 26th, and found him vomiting, complaining of being chilly, and exhibiting symptoms of bronchitis, but none of pneumonia ; that the bronchitis had evidently been caused by exposure to the cold ; that, on the next day, the patient was slightly better, but on the third day, symptoms of pneumonia appeared, and this disease developed and became acute, finally causing his death on November 2d ; that the pneumonia might have resulted from exposure to cold, but that the medical authorities regarded it as an unsettled question whether pneumonia is so caused, and it would be impossible to say whether the cause, in the present case, was the exposure the deceased had undergone on the evening of October 25th, " because the pneumonia did not immediately follow the exposure ; there were some days between the exposure and the pneumonia." Three other physicians, called by the plaintiff, testified that exposure to wet and cold is generally the exciting cause of pneumonia, though it may and sometimes does result from entirely different causes ; that this view was in accordance with the best medical authorities upon the subject, and that, upon the facts which had been testified to respecting the exposure, sickness and death of the deceased, they would attribute the pneumonia to the exposure.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows :

Charge of Court below.

The court is requested by plaintiff to charge the jury as follows :

1. That the furnishing for use as a beverage of intoxicating liquor to a person already intoxicated ; or, to a person of known intemperate habits; or, to an habitual drunkard, is such "unlawful negligence" as would render the person so doing liable to respond in damages for any injury causing death, at the suit of the widow of the decedent in her own right and that of her children.

Answer : Affirmed.

2. That the act of the decedent in taking the liquor offered to him while intoxicated, or being such habitual drunkard or person of known intemperate habits, is not such concurring negligence in him as would relieve the defendants from liability in damages.

Answer : Affirmed.[2]

[An essential question arises in this case, which may be considered out of logical order ; because, unless it is decided in favor of the plaintiff, there is no use in the jury troubling themselves with any other question, and that is this : Was the death of Robert Davies caused proximately by the use of liquor, regardless of who is responsible ? You will separate the two questions. It is not necessary that the death be the immediate result of drinking ; as, for instance, the case of Fink v. Garman, a leading case in this state, where the husband, a man of intemperate habits, was given drink, and afterwards, under the influence of that and other drink furnished from other places, he fell off his wagon and the wheel ran over him, and some time thereafter he died. He did not die from the drink directly, but the jury found that was the proximate cause. There is a case from this county, also, that went to the Supreme Court, where liquor was given to a young man under age until he was, as the jury found, very seriously drunk ; and he lay out at night exposed, and died a considerable time thereafter, and there was a recovery. The giving of the liquor was not the direct cause, but it was the proximate cause. It must be the cause from which the jury can trace (the injury) as a natural and not improbable consequence of the intoxication ; otherwise it is not a cause of action.][3] . . . . .

Now, you have heard the doctors' testimony in regard to

Charge of Court below.

the case. Dr. Everson was called in, on the evening or afternoon of Saturday, and found him with a "high temperature and rapid pulse," I think he said, and complaining about being chilly. He found acute bronchitis. The next day, there were symptoms similar, and on the third morning, when he called, he found decided symptoms of pneumonia, that increased until his death in the short time stated. You will recollect his testimony. [Now, Dr. Everson said it was a matter uncertain among the authorities as to whether exposure to wet and cold caused pneumonia. In that he stands alone, among the four doctors called. The others say that it is recognized as a frequent and the most common exciting cause of pneumonia. That pneumonia can be caused, and is caused by other things than exposure to cold or wet, is not in dispute, and no person will pretend that exposure to wet and cold necessarily leads to pneumonia. It does not; but the weight of testimony in number of doctors (and the credibility is for you, and most of you have some knowledge on the subject in addition), is that it is the most frequent cause of pneumonia.] [4]

Dr. Woodburn, who, you will recollect, is connected with the Allegheny General Hospital, giving his opinion, seemed to think, from the symptoms given by Dr. Everson, it was pneumonia from the start. [Doctors will differ. I would myself have a very decided opinion on the question; but it is for the jury to say whether this falling in the ditch and exposure was the natural consequence of being drunk or under the influence of liquor, and whether that was the proximate cause of this man's death. If it was not, you find for the defendants, and do not trouble yourselves about anything further. If it was, then you come to the question, Who is responsible for that? Who furnished the liquor?] [5] And was it furnished negligently or improperly?

The act of assembly of 1887, and it is a transcript substantially from much older acts running back for many years in this state, makes it unlawful for any person, with or without license, to furnish by sale, gift, or otherwise, to any person, any spirituous, vinous, malt or brewed liquors on a number of occasions, election days, Sundays, and so on, or to a minor, or to a person of known intemperate habits, or to a person visibly affected by intoxicating drink, either for his or her use, or

for the use of any other person; and a preceding act of assembly renders any person selling liquor in violation of that provision liable for the damages which that act may cause to any person injured.  Now, the widow and minor children are parties injured in a case where liquor is sold or given to a man who is either of known intemperate habits, whether drunk or sober, or where he is visibly intoxicated at the time the liquor is given, and the injury comes from the furnishing of that liquor; and it is not material if others may have furnished a part of that liquor to a person of intemperate habits. If this man was a man of intemperate habits, and the defendants furnished him liquor that contributed to this state of intoxication, and it was the proximate cause of the injury, they are liable, even though others may have furnished a part of the liquor. . . . .

The testimony in this case is very conflicting.  It is not possible, I think, to reconcile all the testimony with the truthfulness of the witnesses. . . . .

[The question is, first, in regard to whether or not he was a man of intemperate habits ; then, as to whether he got liquor in that saloon (by that I mean beer, ale, or anything that would intoxicate), during the time, that kept him drunk up to the time he fell into the ditch.  If so, then they are responsible for the consequences of giving him that liquor.  If he was a man of intemperate habits, when they gave him drink, at all, they took the risk of the consequences.  Now, giving him drink or having him drunk ten days before, if he was thoroughly sober the day before, could not be made the proximate cause of this injury.  Bear that in mind.  But I say, if he was a man of known intemperate habits, and they gave him a drink that contributed to a continuous drunk, kept up to the time of his falling into the ditch, they are responsible for the consequences.] [7]. . . . . They assert they did not.  The plaintiff asserts they did.  You will first determine as to whether or not this man was intoxicated.  As I have said, I think the testimony substantially all agrees that he was intoxicated that night. Was the intoxication the proximate cause of his death?  If it was not, you need not trouble yourselves about the other questions, as to which there is so much dispute in the testimony. But if it was, then you come to the question as to who was re-

Arguments.

sponsible for that. Who furnished the liquor that contributed in any way to his intoxication at that time, making the distinction that I have before twice called your attention to, between the case of giving liquor to a man of known intemperate habits, and one not of known intemperate habits but visibly intoxicated at the time ; that, if he is of known intemperate habits, then the drink given him, whether drunk or sober, makes the party furnishing it take the risk of its effects ; if he is not a man of known intemperate habits, then, to make them liable for it, he must have been visibly intoxicated when the drink was given. . . . . .

—The jury returned a verdict for the plaintiff for $2,800 against Felix McKnight and James Quinn; and for the defendants, as to Peter Quinn and Bridget McKnight. A new trial having been refused and judgment entered, the defendants, Felix McKnight and James Quinn, took this appeal, assigning for error :

1, 2. The affirmance of plaintiff's points.[1] [2]

3–7. The parts of the charge embraced in [ ] [3 to 7]

*Mr. A. M. Brown* (with him *Mr. Charles F. McKenna* and *Mr. John D. Brown*), for the appellants.

Counsel cited :

(1) On the question of remote or proximate cause : West Mahanoy Tp. v. Watson, 116 Pa. 344 ; s. c. 112 Pa. 574 ; Scheffer v. Railroad Co., 105 U. S. 249 ; Tetzam v. Naughton, 12 Ill. App. 148 ; Hitchner v. Ehlers, 44 Iowa 40 ; Schmidt v. Mitchell, 84 Ill. 195 (25 Am. Rep. 446) ; Shugart v. Egan, 83 Ill. 56 (25 Am. Rep. 359) ; Krach v. Heilman, 53 Ind. 517 ; Kirchner v. Myers, 35 Ohio St. 85 (35 Am. Rep. 598) ; Davis v. Justice, 31 Ohio St. 359 (27 Am. Rep. 514).

(2) As to the right of a widow to maintain such an action as this, (*a*) at common law : Strouble v. Modwift, 11 Ind. 64 ; Bedore v. Newton, 54 N. H. 117 ; Hockect v. Smelsley, 77 Ill. 109 ; Flynn v. Fogarty, 106 Ill. 263 ; Gilmore v. Matthews, 67 Me. 517 ; Surein v. Pontius, 34 Kan. 353 ; Cassady v. Magher, 85 Ind. 228 ; and (*b*) under the statutes : Moe v. Smiley, 125 Pa. 136 ; Fink v. Garman, 40 Pa. 95 ; Crouse v Commonwealth, 87 Pa. 168 ; Taylor v. Wright, 126 Pa. 617 ; Veon v. Creaton, 138 Pa. 48 ; Barrett v. Dolan, 130 Mass. 360 ; Davis

Opinion of the Court.

v. Justice, 31 Ohio St. 359 (27 Am. Rep. 514); Gilmore v. Matthews, 67 Me. 517; Kirchner v. Myers, 35 Ohio St. 85 (35 Am. Rep. 598); Wightman v. Devere, 33 Wis. 570; Hayes v. Phelan, 4 Hun 733; Jackson v. Brookins, 5 Hun 530.

*Mr. James C. Doty* (with him *Mr. K. T. Meade*), for the appellee.

Counsel cited:

(1) Dickson v. Hollister, 123 Pa. 421; Bunting v. Hogsett, 139 Pa. 363; Haverly v. Railroad Co., 135 Pa. 50; Penna. R. Co. v. Hope, 80 Pa. 373; Penna. etc. Ry. Co. v. Lacey, 89 Pa. 458; Lehigh V. R. Co. v. McKeen, 90 Pa. 129; Fairbanks v. Kerr, 70 Pa. 86; Oil Creek Ry. Co. v. Keighron, 74 Pa. 316.

(2) Section 19, act of April 15, 1851, P. L. 674; act of May 8, 1854, P. L. 663; act of April 26, 1855, P. L. 309; Fink v. Garman, 40 Pa. 95; Elkin v. Buschner, 1 Mona. 359; Taylor v. Wright, 126 Pa. 617; Crouse v. Commonwealth, 87 Pa. 168; Veon v. Creaton, 138 Pa. 48.

PER CURIAM:

The important question upon the trial below was, whether the liquor furnished Robert Davies by the appellants was the proximate cause of his death. This was a question of fact which could not have been withdrawn from the jury in the face of the evidence. There was testimony on the part of the plaintiff tending to prove that Robert Davies left defendants' saloon on Friday night, October 25, 1889, very much intoxicated, in part, at least, the result of liquor furnished by them; that he was obliged to lean upon the arm of Frederick Turnbull, being unable to walk alone; that, when about half-way home, Davies fell and rolled into the gutter, becoming saturated with mud and water; that Turnbull, who was helping him home, was unable to get him out of the gutter, Davies being a large and heavy man, and went to seek help, leaving him lying in the water; that, when finally he was lifted out of the gutter and taken home, he was thoroughly chilled, and put to bed about midnight; that he was taken with an attack of pneumonia, of which he died in a few days.

It is not easy, in a case of this kind, to trace with absolute certainty the death to its proximate cause. But the liquor was

undoubtedly the proximate cause of his falling into the gutter and the consequent exposure, and it was for the jury to find whether the attack of pneumonia was the result of the exposure; in other words, a continuous causation from the furnishing of the liquor. The jury may or may not have made a mistake. We have no means of intelligently deciding this question, nor is it our province to do so. It was peculiarly for the jury; and their verdict ends the matter, unless the court below committed some error in submitting it. This we do not find. The only specifications are to the charge of the court, and we fail to see any misdirection in any of the extracts contained therein. The contention that the voluntary taking of liquor by the deceased, while intoxicated, and being at the time of known intemperate habits, was such contributory negligence on his part as would prevent a recovery by the plaintiff, will not bear examination. Such a ruling would practically destroy the act of assembly. Every drunkard not only takes liquor voluntarily, but whenever he can get it; and because of his weakness the law makes the saloon keeper responsible for selling to such persons. He has not the will-power to resist the temptation, and for this reason the sale to him is forbidden.

Judgment affirmed.