## Charles P. Littell *v.* William Young, Appellant.

*Liquor law—Sale to drunkard—Right of action in injured party.*

A saloon keeper is liable for damages caused by exposure resulting from sale of liquor to an intoxicated person or one of known intemperate habits. This liability is fixed by the Act of 1854, P. L. 663. The injured person, himself, is entitled to recover for such injury.

The principle volenti non fit injuria does not apply, for the reason that one who is either an habitual drunkard or under the influence of liquor has no control of his will and is, therefore, incapable of consenting. The law puts itself in the place of his will and says, in effect: "My will and not the broken down will of the inebriate must govern."

*Practice C. P.—Defective assignments—Partial excerpts not assignable.*

Where the charge of the court taken as a whole, fully and properly discusses the measure of damages, an assignment will not be sustained which challenges only a portion of what was said to the jury on the subject.

*Improper remarks of counsel—Defective assignments—Practice, C. P.*

Where alleged misstatements of counsel are complained of the assignment will not be considered when it does not appear that counsel asked the court to correct the statements and caution the jury, and where no exception is taken at the time in regard to the failure of the court to do so. Where there is nothing which brings them on the record it is impossible for the appellate court to consider the alleged misstatements.

Argued April 12, 1897. Appeal, No. 19, April T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., August Term, 1895, No. 170, on verdict for plaintiff. Before RICE, P J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for sale of liquor to an intoxicated person. Before McCLUNG, J.

The facts of the case are sufficiently disclosed by the charge of the trial judge, McCLUNG, J., which was as follows :

This action is brought by the plaintiff, Littell, to recover damages which he says were caused to him by the unlawful or negligent act of the defendant. The allegation is that on the 7th of February, 1895, Littell was not only a man of known intemperate habits, but that he was at that time visibly affected by intoxicating liquor; that is, that he was drunk; and that the

defendant, not only knowing that he was a man of intemperate habits, but perceiving that he was at the time intoxicated, furnished him liquor ; and that by reason of the furnishing of that liquor, he fell on his way home in a practically unconscious state, and was so frozen that he lost a portion of each of his hands.

In order that you may find a verdict for the plaintiff, he must convince you not only that the defendant did the unlawful act, but that that unlawful act was the proximate cause of the injury which he received. It need not be the immediate cause. As a matter of course, it was not, even if` it was done, the immediate cause in this case. The immediate cause was the cold which froze his hands. But was the freezing a consequent injury, a probable consequence of the act done by the defendant of which complaint is made, a thing which, if the defendant had thought of 'considering the fact that this man had to travel home, he would have regarded as likely to occur, or as, at least, not an improbable occurrence. Perhaps this part of the case will not be the most difficult one for you to determine.

It appears that this young man was picked up on the morning of the 8th of February, 1895, on North avenue, Allegheny, and that at the time his hands were frozen—it was a very cold night—and that from this the injury occurred. It seems that perhaps an hour or more before this another officer had aroused him on the street, just across the narrow park from the street where he was found, and had started him on his way home. Both officers say that he was drunk at the time, and it is an admitted fact that he was just preceding that, within a few hours at least, in the saloon of the defendant on the Diamond. You will notice, if you are acquainted with the surroundings, that these places where the officers find him are practically on his direct road home from the point where the defendant's saloon is situated to where the plaintiff lived.

The first question for you to determine is as to whether or not liquor was furnished to this man, on this night of the seventh of February. Possibly you will first inquire as to whether he was a man of known intemperate habits, or whether he was at the time that he went to that saloon visibly affected by intoxicating drink. [We have an act of assembly passed in 1854 making any person furnishing intoxicating drinks to another person in violation of existing laws, or of the provisions of the

act of which this a part, shall be held civilly responsible for any injury to person or property in consequence of such furnishing. We have in addition to that the act of 1887, which makes it a misdemeanor to either sell or furnish liquor to a man of known intemperate habits, or a man at the time visibly affected by intoxicating drinks. That act existing without reference to the other act, the violation of its provisions would of itself be unlawful negligence. An act done in violation of a criminal statute is of itself an act of negligence, and makes the party doing it responsible for the proximate consequences of the act; and if this defendant furnished to Littell, he being then a man of known intemperate habits, or even if he was not of known intemperate habits, if he was at the time visibly affected by intoxicating drink, if, under those circumstances, the defendant furnished liquor to him, he would be guilty of an act of unlawful negligence which would render him responsible for the consequences of the act. It would render him responsible to the party to whom he furnished it, if the party was so far overcome by the liquor as to take away his own responsibility. If he was able to take care of himself notwithstanding this, as a matter of course, he would be bound to do so, and he could not recover; but a man cannot put liquor into another so as to destroy his capacity to take care of himself, and then charge him with being guilty of contributory negligence because he does not take care of himself. If he makes him so drunk that he falls down and is frozen as the result of that drunkenness, then he would be liable for the act, if the party was either at the time the liquor was furnished visibly affected by intoxicating drink or was a man of known intemperate habits; so that you will perceive that it comes down shortly to this: that if this defendant on this night furnished liquor either to a man of known intemperate habits or to a man at the time visibly affected by drink, and that because of that an injury occurred to him, as, being overcome by the drink, his hands were frozen, then the defendant would be responsible for the damages resulting from the act.] [1]

Did this defendant furnish the liquor to the plaintiff on that night? There will probably be little difficulty on the question as to whether or not he was a man of intemperate habits, and probably little on the other question as to whether or not he

was at the time visibly affected by liquor. If I recollect aright, the testimony on both sides practically concurs as to both of those matters. The defendant, however, says that he did not furnish him any liquor upon that night. If that is true, that is an end of this case. If he did not furnish him liquor, of course he would not be responsible. He may have furnished it before; he may have wrongfully furnished it before; but if nothing resulted from it, then that is his good fortune. The question is whether he, on this night, furnished liquor which at least helped to put this man in a condition which resulted in his being frozen. The plaintiff and his witnesses say that he did get liquor there; that he got it both in the evening, perhaps between six and seven o'clock, and again at ten, and possibly again at eleven o'clock. The plaintiff's witnesses appear here, some of them, to be pretty low in the scale themselves. It does not necessarily result that they do not tell the truth. It is a matter, however, to be taken into account by you. Of course, you could not, under the circumstances set forth by the plaintiff here, expect him to be in the company of people of the highest respectability. You have to take the testimony of such people as know the facts. At the same time, you are entitled to take into account in favor of the defendant the character of those people in determining whether they are correct, whether there is a mistake, or whether they are truthful in their testimony. The credibility of witnesses is always a question for the jury. You will determine these facts, and if you find that this man Young, or his representative, did on that evening in violation of law, furnish liquor to the plaintiff, he being either at the time drunk, or a person of known intemperate habits, and that as a probable consequence of that furnishing, even if it was taken in connection with liquor furnished by other people, he was overcome, fell down on the open street and was frozen so as to injure him, then the defendant would be liable for the damage which he suffered, and the remaining question would be the measure of damages.

Now, when you come to that, you have again to take into account the character of the plaintiff himself.

This is a question of money damage. It is not a question of mere sentiment. It is the damage to this plaintiff; and if he was injured, the elements of damage would be, first, the expense

that he incurred, second, the pain and suffering, and third, the loss of earning power. It does not appear that the first element exists in this case. He was taken to the hospital and was doubtless treated there without any expense, so that there is no expense shown in the case. He would be entitled to recover for his pain and suffering, both the pain and suffering which resulted immediately from the injury, and if there is pain resulting from his being maimed through life, he would also be entitled to recover for that. In addition to that, he would be entitled to recover for his loss of earning power. When you come to that, the defendant is entitled to have you consider the man's habits as well as all other matters which surround the case. His hands are maimed, but it would seem to be very probable, almost certain, that the destruction of his ability to work would not be of as much money value as the destruction of the ability of a sober man. He is a man admittedly of very bad habits, a man who does not work regularly, and a man who would not use his hands as well as a man of sober habits. Of course, it does not follow from this that his hands are of no use to him, or would not be in the future; but what I say to you simply is that it is your duty to take this into account, and to remember, when you come to estimating the value of his hands to him, that it is practically certain that his hands would not be of as much money value to him as the hands of a sober and industrious man. [If you come to the question of damages, if you find that this defendant is liable under the law and under the instructions which we have given you, then you will assess such damages as in your judgment the evidence justifies, and render a verdict accordingly.] [2]

To which charge defendant's counsel except, and at his instance bill sealed.

Verdict for plaintiff for $850. Defendant appealed.

*Errors assigned* were (1, 2) portions of the judge's charge, reciting same, as indicated by brackets in the general charge. (3) In permitting the counsel for plaintiff to state to the jury, and in not correcting said statements in his charge to the jury, as follows : " That the effect of selling liquors by defendant to plaintiff was the cause of ruining the home of Mrs. Littell, mother of said plaintiff." (4) In allowing plaintiff's counsel

to state to the jury, and not correcting the same in his charge, that the defendant closed his saloon at twelve o'clock on the night of February 7, 1895, while the uncontradicted testimony was that he closed his place at 11:10 o'clock. (5) In allowing plaintiff's counsel to state to the jury, and not correcting the same in his charge, that officer Miller, at twelve o'clock, found plaintiff lying upon the sidewalk on Montgomery avenue, near Federal street, when in truth and in fact the officer said on the witness stand that as near as he could judge it was between twelve and half past twelve o'clock. (6) In permitting counsel for plaintiff to state in his argument to the jury, and not correcting the same in his charge, that officer McNimery had found the plaintiff on North avenue, between Arch and Webster streets, about half past twelve o'clock, when in truth and in fact the officer testified that he found the plaintiff about half past one o'clock; that he passed the same place about an hour before, and he, plaintiff, was not there.

*A. H. Rowand,* with him *H. H. Rowand* and *L. J. Long,* for appellant.

*L. K. Porter,* with him *S. G. Porter,* for appellee.

OPINION BY BEAVER, J., July 23, 1897:

The plaintiff in the court below brought his action of trespass against a licensed vendor of intoxicating liquors for the recovery of damages for personal injuries resulting from the freezing of his hands and feet to such an extent that the amputation of some of his fingers became necessary, alleging that the proximate cause of such injuries was the intoxicating drink furnished by the defendant to him, whilst in a state of helpless intoxication. That the intoxicating drink was so furnished must have been affirmatively found by the jury, for they were distinctly instructed by the court below as follows: " The defendant however says that he did not furnish him any liquor upon that night. If that is true, that is an end of this case. If he did not furnish him liquor, of course he would not be responsible. He may have furnished it before; he may have wrongfully furnished it before, but, if nothing resulted from it, then that is his good fortune." Under these instructions the verdict of course

establishes the fact that the sale was made as alleged by the plaintiff and testified to by several witnesses.

The next subject of inquiry by the jury was as to the character of the plaintiff and his condition on the night on which the injury occurred. Was the plaintiff a man of known intemperate habits? Was he visibly affected by drink, when the sale was made by the defendant? Answers to these questions of fact could be legitimately found in the evidence, and the facts in relation thereto were fairly submitted to the jury. In fact, there is little practical denial of the truth of both of them. It was necessary for the jury to find against the defendant on one or both of these questions. It is immaterial whether they found against him on one or both and, if but one, on which. In either case the verdict has a sure foundation, if the plaintiff has a right to recover.

The case so far is free from difficulty, and as we understand the assignments of error, is not open to complaint. It is somewhat difficult to determine from the appellant's first assignment of error of what he does complain. A considerable portion of the charge, covering three or four distinct points, is contained in this assignment. The question of defendant's liability under the act of 1854 and of general liability under the act of 1887, the question of the proximate cause of the injury and of possible contributory negligence on the part of the plaintiff are all involved in the part of the charge contained in the first assignment. That the plaintiff left the defendant's saloon in a state of intoxication is practically admitted. If he were in the helpless condition described by himself and at least one other of his witnesses, the jury were entirely justified in finding that the intoxicating drink which they found to have been furnished by the defendant was the proximate cause of the injury. The plaintiff was found by a policeman shortly after leaving the defendant's saloon in a semiconscious condition, prone upon the earth after midnight with the temperature below zero. Roused to apparent consciousness, he was started homeward but was found within an hour afterwards by another policeman in the condition which necessitated the amputation of his fingers and left him in the condition in which he showed himself to the court and jury. If he were in the condition described above, he could not be guilty of contributory negligence. As was said

in Fink v. Garman, 40 Pa. 95, " Then he was incapable of legal
acts.   He was like an idiot or a child of tender years, and to
such cases the doctrine of concurring negligence is inapplicable.
Not only was he incapable of exercising sound discretion and
therefore is not to be held to its exercise, but his condition was
notice to Fink, was an appeal to his humanity, was such as to
make his violation of the statutes more palpably unlawful neg-
ligence."   It was said in Davies v. McKnight, 146 Pa. 610:
" The contention that the voluntary taking of liquor by the de-
ceased while intoxicated and being at the time of known intem-
perate habits was such contributory negligence on his part as
would prevent a recovery by the plaintiff, will not bear exami-
nation.   Such ruling would practically destroy the act of assem-
bly.   Every drunkard not only takes liquor voluntarily but
whenever he can get it and, because of his weakness, the law
makes the saloon keeper responsible for selling to such person.
He has not the will power to resist the temptation, and for this
reason the sale to him is forbidden."

The fact that others sold intoxicating drinks to the plaintiff
on the same night does not in any way relieve the defendant of
liability under the circumstances of this case nor palliate the
wrong which he did to the defendant.   If the plaintiff were a
man of known intemperate habits and the defendant with others
furnished him liquor while intoxicated and with knowledge of
his habits, why are they not all responsible for the injury which
resulted therefrom?   In such case it would be impossible for
the jury to say which particular glass of liquor was the proxi-
mate cause of his injury.   Each glass did its share of the work:
Taylor v. Wright, 126 Pa. 617.

It is scarcely necessary to discuss the proposition laid down
by the court as to the defendant's general liability for a viola-
tion of the act of 1887.   The plaintiff bases his right to recover
specifically upon the third section of the Act of May 8, 1854,
P. L. 663, which is as follows: " That any person furnishing
intoxicating drinks to any other person in violation of any exist-
ing law or of the provisions of this act shall be held civilly re-
sponsible for any injury to person or property in consequence
of such furnishing and any one aggrieved may recover full dam-
ages against such person so furnishing by action on the case
instituted in any court having jurisdiction of such form of action

in this commonwealth." The only serious question in the case is that of defendant's liability under this act of assembly. Is the plaintiff such a person as is described in the act under the terms " any one aggrieved ? " If so, he is entitled to recover.

A person aggrieved is one who is wronged or prejudiced in rights of property or person by the act of another. That the plaintiff was injured in his person cannot be denied. That this injury was caused by the wrongful act of the defendant has been found by the jury. The plaintiff is of full age. His relations to his mother were of such a character that she could evidently recover nothing for loss of contribution to her maintenance, for he contributed nothing. So far as the evidence shows, she was put to no expense in any way, in consequence of the injury which he sustained and, if she had been, her right to recover under the facts of this case would be more than doubtful. In Brooks v. Cook, 44 Mich. 617, COOLEY, J., in construing the statute of 1877 giving " every wife, child, parent, guardian, husband, or other person, a right of action against a liquor seller for injury done the plaintiff, by reason of the intoxication of any person," held, " That the person to whom the liquor was sold, etc., and who in consequence sustained an injury was not one of the persons for whose benefit the statute was passed," basing this opinion upon the well understood rule of construction " that when after an enumeration the statute employs some general terms to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named." In this case, however, Judge COOLEY distinctly recognizes the authority of the legislature to include the person to whom the liquor was sold as entitled to the benefits of such a statute, saying, " doubtless the statute might have extended its benefits to the intoxicated person ; but if such were the intent it is surprising that it was not distinctly and unequivocably expressed : " 38 Am. Rep. 282. It is to be observed further that this was a case in which a man when intoxicated was robbed and the effort was made to recover the money lost; but in such a case the doctrine of proximate cause applies and there intervenes an active, intelligent and responsible agent in the person of the one who took the money. It could, therefore, be very forcibly argued that the liquor seller should not be held responsible for the act of another which was the proximate cause

of the loss of the intoxicated man. It was held in Nebraska, under the statute relating to this subject, which provides that "The person so licensed shall pay all damages that the community or individuals may sustain, in consequence of such traffic," etc., chapter 50, section 15, Compiled Statutes of Nebraska, 1895, 688, in Buckmaster v. McElroy, 20 Nebraska, 557 (57 Am. Reps. 843), that a licensed saloon keeper who had sold whiskey to the plaintiff, by reason of which he became stupefied and unconscious and whilst in that condition, was subjected to the cold and his legs became frozen, so that amputation became necessary, was liable in a civil suit for damages, and that the injured person was entitled to recover for the injury. The language of this statute is certainly not more comprehensive than that of the act of 1854, supra. We have no clearly adjudicated case upon this question in Pennsylvania, but in Veon v. Creaton, 138 Pa. 48, in which the father had been put to expense and trouble caused by a serious injury to his son occasioned by an accident upon a railroad in consequence of his intoxication, it was held that the father could not recover, for the reason that he was not a person aggrieved within the meaning of the act.

In delivering the opinion of the court in this case, Mr. Justice CLARK says: "Myron H. Veon was 25 years of age and sui juris, and if there is any right of recovery for his alleged injuries in consequence of the defendant's wrongful act, it would seem to be in the son and not in the father." In enacting the statute of May 8, 1854, supra, the legislature followed the clear analogies of the common law which for most injuries to person or property provide a remedy for the private wrong to the person injured by a civil suit for damages and for the public wrong by indictment. If the defendant had felled the plaintiff by a blow with a bludgeon, so that the injuries complained of had resulted, there could be no doubt about his liability in this action for injury to the person. The injury in such case is scarcely more direct that when, after contributing to his condition, as has been found by the jury in this case, the plaintiff is sent forth by the defendant whether by forcible eviction as he claims or a simple invitation as is claimed by the defendant at midnight with the temperature below zero, reason beclouded, will paralyzed and body incapable of ordinary locomotion, to find his way home unaided. The principle volenti non fit in-

juria does not apply, for the reason, that one who is either an habitual drunkard or under the influence of liquor has no control of his will and is therefore incapable of consenting. The law puts itself in the place of his will and says, in effect, " My will and not the broken down will of the inebriate must govern." All our legislation in regard to habitual drunkards proceeds upon the theory that the inebriate is entirely irresponsible, that reason, conscience, affections and will are all dethroned; that whenever will comes in conflict with appetite, it necessarily goes down· in the contest; hence the will of relatives is made effective by notice to the party who furnishes intoxicating liquors contrary thereto ; hence as here, the law asserts its mandate in place of the inebriate's will. As was said in Davis v. McKnight, supra, " He has not the will power to resist the temptation, and for this reason the sale to him is forbidden." The· comprehensive character of the statute, under which the plaintiff seeks to recover here, was commented upon in Fink v. Garman, supra, in which the opinion was delivered by Mr. Justice WOODWARD (G. W.) which has been distinctly recognized and commended in Taylor v. Wright, supra, and which, although its facts differ from those of the present case, clearly and ably sets forth many of the fundamental principles upon which cases of this character rest. Giving, therefore, to the first assignment of error the fullest possible effect, we can see nothing in any of its aspects which will justify us in sustaining it.

The second assignment of error is not sustained. It relates to the question of damages, but contains only a portion of what was said by the court to the jury upon the subject. This question was fully and fairly submitted to the jury in a manner quite as favorable to the defendant as he had any right to expect. His rights were well guarded in what the court below said upon the subject.

As to the third, fourth, fifth and sixth assignments of error they all relate to alleged statements made by counsel for the plaintiff in his closing argument to the jury. It appears by the stenographer's notes that " Mr. Rowand calls the attention of the court in the presence of the jury to the following misstatements of testimony and improper statements made by Mr. Porter in his argument to the jury, and makes the following corrections thereof," and then follow the alleged misstatements

of the plaintiff's counsel which are complained of in these assignments. Appellant's counsel did not ask the court to correct these statements and to caution the jury in regard to them. He took no exceptions at the time in regard to the failure of the court to do so. There is nothing which brings them upon the record, and it is impossible for us to consider them. There is no similarity between the action of the defendant's counsel in this case and that of the defendant's counsel in Holden v. R. R. Co., 169 Pa. 1, upon which he relies. The assignments of error are all overruled, and the judgment is affirmed.