Schelin, Appellant, *v.* Goldberg.

342

Argued October 4, 1957; reargued June 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Michael Shekmar*, with him *Harold B. Lipsius*, for appellant.

*Richard J. Raab*, with him *James H. McHale*, and *S. B. Singer*, for appellee.

OPINION BY WOODSIDE, J., December 9, 1958:

This is an appeal from the order of the court below granting the defendants' motion for a new trial after the plaintiff had recovered a verdict for damages which he suffered while a patron of the defendants' taproom.

Considering the evidence in the light most favorable to the plaintiff, which we are required to do in the light of the verdict, we find that the plaintiff en-

tered the defendants' taproom on the night of October 4, 1952, visibly intoxicated. In the four or five hours preceding his entry he had visited several other bars and had consumed 12 or 13 double shots of whiskey and an equal number of beers. He was served several additional double shots of whiskey and several beers (probably four) at the defendants' taproom. While in the defendants' establishment, he bought flowers from a boy who came into the taproom selling them. He attempted to pin these on several patrons, including a man by the name of Richard Monk. Monk resented this, and the plaintiff and he became involved in an argument. When the plaintiff left the bar and walked towards the exit, he was conscious of somebody following him. He thinks it was Monk but is not sure. Before the plaintiff reached the exit he was struck on the side of the head and knocked to the floor. Without any help he arose to his feet and left the taproom. When he was a short distance away from the taproom, a motorist noticed that he was badly injured and took him to the hospital where it was found that his injury required the removal of his left eye.

The defendants admit that the plaintiff came into their place of business intoxicated on the night in question and their testimony shows that he was struck by Monk. They deny that he was served anything at their taproom and they question that he received the serious injury of which he complains, while in their taproom.

In July of 1954 the plaintiff sued the defendants, and at the trial of the case received a verdict of $4890.35. The court below refused a motion by the defendants for judgment n.o.v., but granted their motion for a new trial.

The trial judge had charged the jury that when an intoxicated person is furnished intoxicating beverages, the recipient is not guilty of contributory negligence

344

by accepting and consuming the intoxicant. Taking the charge as a whole, he, in effect, instructed the jury that as a matter of law the plaintiff could not be held guilty of contributory negligence for taking the liquor and in engaging in the altercation with Monk. The defendants moved for a new trial on the ground that this was error and the court below speaking through Judge MILNER said in granting the motion, "In the circumstances, we think this was a misdirection sufficient to require the granting of a new trial."

In 1854 the legislature passed the Act of May 8, P. L. 663, which in section 3 provided: "That any person furnishing intoxicating drinks to any other person in violation of any existing law, or of the provisions of this act, shall be held civilly responsible for any injury to person or property in consequence of such furnishing, and anyone aggrieved may recover full damages against such person so furnishing by action on the case, instituted in any court having jurisdiction of such form of action in this Commonwealth." This section was specifically repealed by section 901 of the Act of April 12, 1951, P. L. 90, 179.

A number of cases were decided under the Act of 1854, including two very recent ones[1] which arose only a short time prior to the repeal of section 3 of said act.

On the question of proximate cause the Supreme Court said in *Fink v. Garman*, 40 Pa. 95, 104 (1861) : "If that last drink was the proximate cause of his own death, then the statute gave the widow a right of action also against (the person who gave it to him)." From this statement it would seem that the drinks *served by the defendants* had to be the ones which were

---

[1] *Manning v. Yokas*, 389 Pa. 136, 132 A. 2d 198 (1957) and *McKinney v. Foster*, 391 Pa. 221, 137 A. 2d 502 (1958).

the proximate cause of the injury, but in *Taylor v. Wright,* 126 Pa. 617, 621, 17 A. 677 (1889), the Court said: "I do not see why they are not all responsible for the accident which resulted therefrom. In such case (furnishing liquor to a man of known intemperate habits by more than one licensee) it would be impossible for the jury to say which particular glass of liquor was the proximate cause of his death. Each glass did its share of the work." This case was cited with approval on this point in *McKinney v. Foster,* 391 Pa. 221, 232, 137 A. 2d 502 (1958). In *Bier v. Myers,* 61 Pa. Superior Ct. 158, 160 (1915) the defendant was held liable for the death of one of his customers even though deceased arrived at the defendant's establishment "staggering drunk".

In the case before us the trial judge submitted the question of proximate cause to the jury under proper instructions. On the question of contributory negligence the courts held the following in the cases decided under the Act of 1854: "If the proximate cause was compounded of his act, and the unlawful act of the decedent, the civil remedy is gone." But, if the deceased was already intoxicated, he was incapable of legal acts, like an idiot or a child, and the doctrine of concurring negligence is inapplicable. *Fink v. Garman,* supra, 40 Pa. 95, 106. "The contention that the voluntary taking of liquor by the deceased, while intoxicated, and being at the time of known intemperate habits, was such contributory negligence on his part as would prevent recovery by the plaintiff, will not bear examination. Such a ruling would practically destroy the act of assembly." *Davies v. McKnight,* 146 Pa. 610, 618, 23 A. 320 (1892); *Wilson v. Hess,* 77 Pa. Superior Ct. 515, 519 (1921). See also *Lang v. Casey,* 326 Pa. 193, 191 A. 2d 586 (1937). "The principle volenti non fit injuria (he who consents cannot re-

ceive an injury) does not apply, for the reason, that one who is either an habitual drunkard or under the influence of liquor has no control of his will and is therefore incapable of consenting." *Littell v. Young*, 5 Pa. Superior Ct. 205, 214, 215 (1897).

Section 1 of the Act of 1854, supra, provided: "That wilfully furnishing intoxicating drinks by sale, gift or otherwise to any person of known intemperate habits, to a minor, or to an insane person for use as a beverage shall be held and deemed a misdemeanor." This was repealed by the Act of April 12, 1951, supra, but a provision somewhat similar to this can be found in the Act of 1951, P. L. 90, 146, §493 (subsection 1), 47 PS §4-493, which reads as follows: "It shall be unlawful— . . . (1) For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits."

Section 3 of the Act of 1854 was specifically repealed by §901 of the Act of 1951, P. L. 90, 179, without any similar provision being placed in any presently existing legislation.

When an act embodying in expressed terms a principle of law is repealed by the legislature, then the principle as it existed at common law is still in force. *American Rolling Mill Co. v. Hullinger*, 67 N.E. 986 (Indiana—1903).

This is the first case of this kind brought to the appellate courts where the cause of action arose since the repeal of the Act of 1854. We are here required to determine what, if any, effect the repeal of the Act

of 1854 had upon the legal principles applicable to this case.

The court below held that "Whether the plaintiff's recovery is barred by his contributory negligence in accepting and imbibing the liquor illegally sold to him and in engaging in an altercation with another patron is, we think, a matter for determination by the jury, under proper instructions from the court."

The court below concluded that since the repeal of the Act of 1854, violation of the present liquor law prohibiting the sale of liquor to minors and intoxicated persons represented negligence on the part of the defendants, but that the plaintiff could be guilty of contributory negligence. It presumably arrived at this conclusion on the theory that the above cases decided under the Act of 1854 stated that to hold otherwise concerning contributory negligence "would practically destroy the Act of Assembly."

Under the common law the violation of a legislative enactment by doing a prohibited act, makes the actor liable for an invasion of an interest of another providing, among other things, that the intent of the enactment is exclusively or in part to protect an interest of another as an individual and that the plaintiff has not so conducted himself as to disable himself from maintaining an action. Restatement, Torts, §286.

We agree with the court below that it is negligence for the defendants to have served intoxicating beverages to the plaintiff when he was already intoxicated, and that they are liable providing their unlawful negligence was the proximate cause of the injury, and providing also that the plaintiff either was not guilty of contributory negligence or, as a matter of law, could not have been guilty of contributory negligence. See Restatement, Torts, §483, and the above cases decided under the Act of 1854.

Could negligence on the part of the plaintiff prevent his recovery for bodily harm resulting from the defendants' negligence? If it could prevent his recovery, then contributory negligence of the plaintiff becomes a question of fact for the jury, and the court below properly granted a new trial, but if the plaintiff's negligence does not bar his recovery then the charge of the trial judge was correct and the granting of the defendants' motion for a new trial must be reversed.

The Restatement, Torts, section 483, is as follows: "If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute."

Section 493 of the Liquor Code of 1951, supra, 47 PS §4-493, making it unlawful to sell, furnish, or give any liquor to any person visibly intoxicated was enacted to protect society generally, but to protect *specifically* intoxicated persons "from their inability to exercise self-protective care."

The principle set forth in the restatement was applied in Pennsylvania a number of times. See *Littell v. Young,* supra, 5 Pa. Superior Ct. 205 (1897); *Fink v. Garman,* supra, 40 Pa. 95 (1861); *Taylor v. Wright,* supra, 126 Pa. 617, 17 A. 677 (1889); *Davies v. McKnight,* supra, 146 Pa. 610, 23 A. 320 (1892); *Bower v. Fredericks,* 46 Pa. Superior Ct. 540 (1911); *Biers v. Myers,* supra, 61 Pa. Superior Ct. 158 (1915); *Wilson v. Hess,* supra, 77 Pa. Superior Ct. 515 (1921); *Lenahan v. Pittston Coal Min. Co.,* 218 Pa. 311, 67 A. 642 (1907); *Stehle v. Jaeger Automatic Machine Co.,* 225 Pa. 348, 74 A. 215 (1909). See also *Kiriluk v. Cohn,* 16 Ill. App 2d 385, 148 N.E. 2d 607, 610 (1958) in

which a widow was allowed to recover for the death of her husband whom she shot after he became intoxicated at the defendants' establishment.

In *Fink v. Garman,* supra, 40 Pa. 95, 105 (1861) Mr. Justice WOODWARD said, "It would probably be found, if it were worth-while to go into an examination of all prior legislation, that it never was lawful, but always unlawful negligence in Pennsylvania to furnish liquors to men actually drunk at the time, or known to be habitually intemperate."

We are of the opinion that the principle of law set forth in the Restatement was applied in the cases cited above because it related to the legislative prohibition of the sale to intoxicated persons or minors, and not because the Act of 1854, supra, in section 3 contained legislative authority to sue.

In *Fink v. Garman,* supra, p. 106, Mr. Justice WOODWARD said, in speaking of Garman who was killed after having been sold liquor by Fink while intoxicated: "If, therefore, Garman was precipitated from his horse under the wheels of his wagon by reason of Fink's deliberate wrongdoing (and of this the jury must have been satisfied before they could find for the plaintiff), the turpitude of Fink's act is not to be abated, but rather increased by such concurrence as he obtained from the inebriate. It was not a responsible concurrence. It does in no degree relieve Fink's liability. The parties were not on equal footing, and it would be a great misjudgment to hold them equally responsible for what was done. The Act of 1854, which makes it a misdemeanor to furnish an inebriate liquor, takes no notice whatever of the drunkard's act in accepting the furnished liquor. This marks the distinction which every man's moral sense feels to exist between the acts of the parties."

We are of the opinion that the plaintiff's recovery would not be barred by contributory negligence on his part and, therefore, the charge of the trial judge was a proper application of the law.

The order granting a new trial is reversed and judgment is directed to be entered on the verdict.