# Olmsted & Bailey versus Gere.

1. Where a physician has not been called or examined in chief as an expert, questions cannot be put to him on cross-examination which would only be admissible in the case of an expert.

2. A physician and surgeon who has graduated from a well-known medical college, and subsequently served as surgeon in the army for nearly three years, is competent to testify as an expert with relation to a broken limb which he has examined.

3. In an action for alleged malpractice in the treatment of a broken limb, it is competent for the plaintiff to call an expert and to propound to him a hypothetical question based on the actual facts, and then to inquire whether the facts indicate such care and attention on the part of the surgeon in charge as the case demanded.

4. In such case it is not competent for the defendant to prove declarations of another physician, made in the plaintiff's presence after defendant had been discharged from the case, to the effect that the treatment had been right and proper. The proper course, is for the defendant to call the physician who has made such statements to the stand.

5. Where in such case the defendant calls an expert who has heard the testimony in the cause and examined the limb, he may be asked to express his opinion, based on his knowledge derived from the above sources as to whether the limb was skillfully or unskillfully treated, and whether a deformity which has ensued was caused by malpractice, or by the severe nature of the original injury.

6. In such case, the expert will be allowed to express an opinion, as to whether the present condition of the limb is as good as the average condition of such cases treated by skillful physicians.

[Olmsted *v.* Gere.]

7. In such case, the expert cannot be permitted to testify as to the details and results of another similar case in his practice.

March 13th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Susquehanna county:* Of July Term 1881 No. 22.

Case, by Charles E. Gere against J. C. Olmsted and Leland Bailey, to recover damages for alleged malpractice in the surgical treatment of a broken leg.    Plea, not guilty.

On the trial, before McCOLLUM, P. J., the following facts appeared : On January 18th 1878, the plaintiff while driving a team and wagon laden with coal, fell from his wagon and his leg was broken between the knee and ankle.    He was picked up in an unconscious state and taken to a hotel at Dundaff, and Doctors Olmsted and Bailey, physicians and surgeons practicing in partnership, were summoned.    They found the injury to consist of a compound comminuted fracture of the lower third of the left leg, the bones of the tibia protruding through the wound.    One of the arteries was also ruptured.    The surgeons immediately treated the fracture and applied splints with a temporary dressing of bandages, &c.    The next morning the patient was removed to the residence of his brother-in-law. The fracture was followed by necrosis.    Doctors Olmsted and Bailey treated him, at the special request of Gere's brother, until April 1st, when they were discharged and another physician, Dr. Burnett, was employed.    The latter attended Gere until May 24th 1878, when Gere was removed to his home in Brooklyn, Pa.    On the 25th of June, Gere while attempting to walk on crutches had a fall in his room, and again seriously injured the leg.    He testified: " This bone that was so prominent was struck on the hard wood floor, and it was drawn by the skin there over the end of that bone, and that cut through and kind of slit the flesh up on the end of the bone."    There was some evidence that the bone was again broken by this fall, but this was denied by the plaintiff.    Subsequently, in the autumn of 1878, the plaintiff went to Binghampton, where Dr. Ford removed two pieces of dead bone.    The result was, finally, that the leg was cured, but in a crooked shape, and shortened about an inch.    On November 2d 1878, he brought this suit.

Dr. Olmsted was an old practitioner of high standing and acknowledged ability.    Dr. Bailey was a young man, a graduate of the University of New York, and had been in practice with Dr. Olmsted for about three years.    The plaintiff alleged that Dr. Olmsted left the greater part of the treatment to Dr. Bailey, who by neglect and unskillful treatment failed to effect a proper cure.    Voluminous evidence was taken on both sides.

The expert testimony as to the proper method of treatment in such a case was conflicting, but no witness seriously condemned the defendants' treatment.

The defendants' counsel, in cross-examining Dr. A. J. Ainey, one of plaintiff's witnesses, as to the fracture, asked the following questions: Q. "If it was twisted or crooked at that time, with nothing but a fibrous union, it could easily have been straightened, could it not?" Objected to, as not cross-examination, the witness not having been called or examined as an expert; objection sustained. Exception. (First assignment of error.) Q. "Did you find this limb when you went there on the 18th of March with Dr. Bailey, properly dressed?" Same objection; objection sustained. Exception. (Second assignment of error.) Plaintiff, after having elicited from Dr. Ford the facts that he had graduated in 1860 from the College of Physicians and Surgeons in New York, and subsequently served as surgeon in the army for nearly three years, asked him: Q. "From your knowledge and experience, finding that bone projecting outward and forward, it having been broken, what would you say as to whether that fracture had been skilfully and expertly treated?" Objected to, because witness had not been shown to be competent as an expert; objection sustained. Exception. (Third assignment of error.) Plaintiff asked Dr. Burnett: Q. "If there was a compound fracture of the leg on the 18th, put up in a plaster-of-Paris bandage on the 19th, and not visited again by the surgeon in charge until the 24th, did the surgeon give to the case such attention and diligence as the case demanded?" Counsel for plaintiff stated that the purpose was to show lack of diligence on the part of these surgeons in not giving the case such attention as it demanded. Objected to as immaterial, irrelevant, and not pertinent. It being in evidence the wound did not need attention during that time, that it was doing well and the inflammation subsiding. Objection sustained. Exception. (Fourth assignment of error.)

The defendant offered to prove by witness that after Dr. Blakeslee had examined the fracture and his treatment, he said in the presence of the plaintiff that the treatment of the limb was right and proper. Objected to; objection sustained. Exception. (Fifth assignment of error.) Defendant asked Dr. George Burr: Q. "From the testimony you have heard as to the mode in which this limb was treated by Dr. Bailey, and from the results you find upon the limb, was there any unskillful management on his part?" Objected to, because it was giving the opinion of the witness as to the credibility of the testimony, and because it is giving an opinion upon the results arrived at in his own mind as to what is the true state of the

[Olmsted *v.* Gore.]

case, which an expert cannot decide; objection sustained. Exception. (Sixth assignment of error.)

Q. "You have seen this limb. State whether the condition it is now in is as good as the average of the cases, that are treated by skillful physicians, of compound comminuted fracture of the tibia and fibula followed by necrosis of the bone?" Objected to; objection sustained. Exception. (Seventh assignment of error.) Q. "State whether or not this limb is in as good condition and the results are as good as the average run of cases of compound comminuted fracture of the leg that are treated in a skillful manner by skillful physicians?" Objected to; objection sustained. Exception. (Eighth assignment of error.) Q. "In cases of compound comminuted fracture of the limb followed by necrosis of the bone, state whether or not there is almost always great deformity?" Objected to; objection sustained. Exception. (Ninth assignment of error.) Q. "State whether you had a case recently of compound comminuted fracture, and what the results of it were?" Objected to; objection sustained. Exception. (Tenth assignment of error.) Q. "Whether you have seen your son use the plaster-of-Paris bandages?" Objected to; objection sustained. Exception. (Eleventh assignment of error.) The court subsequently permitted the witness to answer the question what are the general results of compound comminuted fracture of the leg when treated with skill?

Verdict for plaintiff for $4,000, which was subsequently, on a motion for a new trial, reduced to $2,500, and judgment thereon. The defendants thereupon took this writ, assigning for error the above rulings of the court as to evidence.

*E. L. Blakeslee*, for the plaintiffs in error.—The defendants should have been allowed to prove that the cure effected was as good as the average of cures in similar cases when properly treated: Buel *v.* N. Y. C. R. R. Co., 31 N. Y. 316; Filer *v.* N.Y. C. R. R. Co., 49 N. Y. 42.

*McCollum* and *Watson*, for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

In January, 1879, the plaintiffs in error, partners in the practice of medicine and surgery, undertook to treat the defendant in error for a compound comminuted fracture of the lower third of the tibia and fibula; and, after attending him professionally for about ten weeks, they were discharged. The injury, which was a very serious one of the kind, caused by his being

[Olmsted v. Gere.]

run over by a loaded wagon, was followed by necrosis of the bone. After protracted treatment the limb was saved, but in such a shortened and deformed condition as to partially deprive him of its use. It was contended in the court below that the plaintiffs in error were negligent and unskillful in their treatment of the injured limb, and by reason thereof it was not as fully restored as it should have been, and the personal suffering of the defendant in error was unnecessarily increased. Testimony tending to prove these allegations was introduced. The questions of fact thus presented were exclusively for the jury, and no complaint is made of the manner in which they were submitted : but, it is claimed there was error both in the admission and rejection of testimony which had an important bearing on the questions before the jury. The specifications of error are restricted to these points.

It is a sufficient answer to the first assignment to say that the question propounded to Dr. Ainey was not proper cross-examination. He was not called or examined in chief as an expert, nor was he asked to give a professional opinion on the facts to which he testified. If the defendants below had desired his opinion as an expert, they had an undoubted right to call and examine him as such, but it would have been irregular for them to interject their defence in the manner proposed. For a similar reason there was no error in the ruling complained of in the second specification.

The third assignment was not pressed, nor indeed could it have been with any prospect of success. Before the witness, Dr. Ford, was asked to give his professional opinion as to whether the fractured limb had been skillfully or unskillfully treated, he had testified that he graduated in 1860, from the College of Physicians and Surgeons in New York, and subsequently served as surgeon in the army for nearly three years; that he had examined and treated the injured limb, after the plaintiffs in error were discharged from the case, and explained the condition in which he found it, etc. In view of this evidence, proving his competency to testify as an expert, the court was clearly right in overruling the objection.

The fourth and fifth assignments are not sustained. The testmony complained of in the former was both competent and relevant. The declarations of Dr. Blakeslee, referred to in the latter, were clearly inadmissible. He could have been called to testify that the treatment of the injured limb was " right and proper," but it was not competent to prove his declarations to that effect, whether made in the presence of the plaintiff below or not.

The sixth to ninth assignments, inclusive, relating to the refusal of the court to permit Dr. George Burr to answer the

[Olmsted *v.* Gere.]

questions therein specified, may be considered together. Dr. Burr had examined the injured limb and had heard the witnesses testify as to the manner in which it had been treated by Dr. Bailey, one of the defendants below. He was then asked to give his opinion, as an expert, based on the testimony he had heard and his own knowledge of the case, as to whether it had been skilfully or unskillfully treated. He was also asked to state, " whether or not the limb is in as good condition and the results are as good as the average run of cases of compound comminuted fracture of the leg that are treated in a skillful manner by skillful physicians." The next question was: "In cases of compound comminuted fracture of the limb, followed by necrosis of the bone, state whether or not there is almost always great deformity?" It is contended the court erred in excluding the testimony sought to be elicited by these questions and that covered by the seventh specification.

The injured limb, evidently somewhat deformed, was shown to the jury, and the course of the treatment, to which it had been subjected, was fully described by the witnesses. The inference, sought to be drawn therefrom, was that careless and unskillful treatment was the cause of the deformity. Hence, it was vitally important for the defendants to satisfy the jury that such was not the case; that, on the contrary, the condition of the limb, as exhibited to them, was the result of the severe injury the plaintiff received, followed, as such injuries frequently are, by necrosis of the bone; that the limb was in as good condition as could ordinarily be expected in such a case, when properly treated by a skillful surgeon. In determining whether a disease or an injury has been treated with proper care and skill, courts and juries must depend mainly on the testimony of experts; and considerable latitude must necessarily be given in the examination of such witnesses, and in propounding hypothetical questions for their opinion. The testimony proposed was competent and the witness should have been permitted to answer the questions embraced in the sixth, eighth and ninth specifications. We can not say the error was fully cured by subsequently permitting the same witness to answer the question, "what are the general results of compound comminuted fracture of the leg when treated with skill?" His answer to that general question indicated that his response to the other more specific questions would probably have been favorable to the defendants on the point most vital to their defence. The seventh, tenth and eleventh assigments are not sustained.

> Judgment reversed and a venire facais de novo awarded.