# Norwood *v.* Goeddel, Appellant.

*Negligence—Dentist—Failure to cleanse hand or wash instruments—Infection—Evidence.*

1. In an action against a dentist to recover damages for injuries to the plaintiff's jaw, the case is for the jury and a verdict and judgment for plaintiff will be sustained where the evidence for the plaintiff tends to show that the defendant after having operated upon a patient for an abscess of the jaw, immediately afterwards, without having washed his hands, or cleansed or sterilized his instruments cut the plaintiff's gum after having drilled a tooth which was sound, at a point where there was no ulceration, and that a few days afterwards the gum ulcerated resulting in necrosis of the jaw and the ultimate removal of a portion of the jawbone.

2. In such a case an expert called by the plaintiff was asked an hypothetical question as follows: "Suppose a person after having lanced an abscess in one patient without washing his hands, undertakes to lance the gums of another patient, but before doing so handles the cutting part of the blade of the knife with his hands or fingers, and that second patient develops an abscess at the point where lanced a few days later, to what would you attribute that abscess? A. Well, to infection." *Held*, that the question was a proper one, and that the answer to it should not be ruled out.

ORLADY, J., dissented.

Argued April 17, 1914. Appeal, No. 90, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., April T., 1912, No. 1,385, on verdict for plaintiff in case of William Norwood v. Dr. Oscar H. Goeddel. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial it appeared that the defendant on September 23, 1911, was a practicing dentist in the city of Pittsburg, and had practiced dentistry for about a year prior to that date. The plaintiff complained that owing to the negligence of the defendant in operating upon him, an abscess had developed in his jaw which

resulted finally in necrosis of the jaw requiring an operation by which a portion of the jaw was removed. The facts relating to the alleged negligence are fully stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,025. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant and (2) refusal of motion for judgment for defendant n. o. v.

*W. S. Maxey,* for appellant.—We believe that this case was ruled absolutely by Friend v. Kramer, 236 Pa. 618.

See also Gosser v. Ohio Valley Water Company, 244 Pa. 59.

The jury should not have been permitted to guess the cause of the abscess: Alexander v. Penna. Water Co., 201 Pa. 252; Zahniser v. Penn. Torpedo Co., 190 Pa. 350; Wharton v. Bradford City, 209 Pa. 319; Welsh v. Erie & Wyoming Valley R. R. Co., 181 Pa. 461; Sandt v. North Wales Foundry Co., 214 Pa. 215.

*Thomas M. Marshall,* with him *Thos. M. Marshall, Jr.,* for appellee.—In Brashear v. Traction Company, 180 Pa. 392; McCafferty v. Pennsylvania Railroad Company, 193 Pa. 339, and Lenahan v. Coal Company, 225 Pa. 218, it was held, that one suing for a personal injury, negligently inflicted, is not bound to exclude the possibility that the accident might have happened in some other way than alleged, but is required only to satisfy the jury by a fair preponderance of the evidence, that it occurred in the manner in which he claimed it did: Davies v. McKnight, 146 Pa. 610.

OPINION BY KEPHART, J., November 16, 1914:

This case grows out of alleged malpractice on the part of the defendant, a dentist. Upon a verdict in plaintiff's

favor, the trial court was asked to enter a judgment
n. o. v. This was refused, hence the appeal. The sole
question here raised is: Was there sufficient evidence to
show that the injury resulted from the negligence of the
defendant?

From a careful review of the testimony for the plain-
tiff we secure the following facts: the plaintiff, a young
man, sound in body, continuously engaged at work
prior to the injury complained of, went to the defendant
on Saturday, September 23, 1911, to have a trouble-
some tooth treated. His teeth, with this exception, and
his jaw were sound and .in a healthy condition, from
which he had no pain. The dentist drilled this tooth,
which was in the right side of the upper jaw, and sealed it
with a cement filling. This filling seemed to give trouble
and the plaintiff visited the defendant on several occa-
sions thereafter for treatment. On Monday, Septem-
ber 25, 1911, when the plaintiff went to the office, the
defendant was engaged with a patient named Schaefer
in the adjoining room. Schaefer, with a friend, Weber,
and the dentist came from this room to the room in
which the plaintiff was waiting. After some preliminary
remarks the defendant told the plaintiff that he had just
operated on Schaefer for an abscess in his jaw. Schaefer
described this abscess in his jaw as being very painful
and as not entirely healed on the day of the trial. This
abscess had been cut and scraped. Immediately there-
after Schaefer and Weber left the waiting room and the
plaintiff and defendant entered the operating room.
The dentist then took out the filling in the tooth in the
upper jaw and left it out, relieving the pain. Defendant
then stated that this was a funny tooth, and that he
believed that it was his wisdom tooth on the right side
of his lower jaw that was giving him trouble because
sometimes gas would form around the root of a wisdom
tooth and cause pain, and that he would just drill that
tooth and release this gas. From the time that Schaefer,
the preceding patient, left the room, the defendant had

not washed his hands; and he took the knife, with which he operated on plaintiff, and passed the cutting part over his unwashed hands and fingers, and used it on plaintiff without sterilizing it. There was some evidence that it was the same knife that had been used on Schaefer, but there was no positive identification. The defendant, without making any extended examination, proceeded to drill a perfectly sound tooth in the lower jaw and afterwards lanced and cut the gum to release the supposed gas, handling both the gum and tooth with his fingers during the operation. The plaintiff returned the next day, September 26, complained of this second operation, and was sent away and told not to return unless his jaw hurt very badly. In a few days the jaw gave him so much trouble that he went to another dentist. It was found that an abscess had formed where the gum had been lanced. The swelling intensified, discharging an offensive odor. In July, 1912, another operation was performed for necrosis of the jaw. A piece of the jawbone was removed, after which the plaintiff recovered.

Upon these facts, the plaintiff, to prove the connection between the acts of the defendant and the illness complained of, called a number of expert witnesses. These witnesses were professional men, sufficiently qualified to answer the hypothetical questions asked them. Such testimony is competent to prove causal connection: Commonwealth v. Bubnis, 197 Pa. 542; Commonwealth v. Buccieri, 153 Pa. 535; Commonwealth v. Crossmire, 156 Pa. 304; McLain v. Commonwealth, 99 Pa. 86; Williams v. State, 64 Md. 384; Olmsted v. Gere, 100 Pa. 127; Davies v. McKnight, 146 Pa. 610; Flaherty v. Gas Co., 30 Pa. Superior Ct. 446; 12 American & English Encyclopedia of Law, p. 446. The hypothetical questions should be based upon testimony produced at the trial and be grounded on such testimony, free from strained inferences. When such question fairly presents the facts and when the answer reveals

the causal connection, the testimony is then for the jury, unless the case should turn on other matters: Pannell v. Commonwealth, 86 Pa. 260; First Natl. Bank of Easton v. Wirebach, 106 Pa. 37; Yardley v. Cuthbertson, 108 Pa. 395. In the case at bar it must be remembered that the facts, taken from plaintiff's testimony, showed that Schaefer had an abscess of a chronic nature, that in every abscess there are pus producing germs, that the defendant had lanced and scraped the infected parts, and, without washing his hands, handled the cutting part of the knife, and without sterilizing or disinfecting it after so handling, performed the operation on the plaintiff; and that at this point of lancing, within a few days, an abscess developed.

Among the witnesses for the plaintiff to prove causal connection was Dr. Dippel, who testified in part as follows:

"Q. I want to ask you this question: suppose a person after having lanced an abscess in one patient, without washing his hands undertakes to lance the gums of another patient, but before doing so handles the cutting part of the blade of the knife with his hands or fingers, and that second patient develops an abscess at the point where lanced a few days later; to what would you attribute that abscess? A. Well, to infection. Q. And how would that infection get on the knife? A. From the operator's hand. Q. And would that be a natural and probable thing to expect under these conditions? A. Yes, sir. Q. It would? A. Yes, sir. Q. Dr. Dippel, in case a dentist or other person were to cut an abscess in a patient's mouth, and shortly thereafter, without first washing his hands and without sterilizing the knife, he should cut the gums of another patient, and some days thereafter an abscess developed in the second patient, what in your opinion would be the cause of the abscess in the second patient? A. Were the gums in the second patient healthy? Q. Assume that the patient had no pain in the gums? A. Well then, it would be

due to lack of sterilization.  Q. Now, I will put some-what the same question, with some additions.  Assume that a sound, healthy man, under twenty-two years of age, who was strong and had had no physical ailments of any kind for at least ten years, whose complexion was clear, and who was not subject to pimples or outbreaks of any kind upon the skin, had his gums lanced with a knife which a short time before had been used for the lancing of an abscess in another patient's mouth, with-out having been sterilized in the meantime; would you be able to give an opinion as to what that would prob-ably result in?  A. Yes, sir.  Q. What would it probably result in?  A. It would probably result in infection."

The evidence did not clearly point out that this was the same knife that was used on Schaefer; both Schaefer and the plaintiff attempted some description of it. There is no doubt from the plaintiff's testimony, as we understand it, that the defendant did not wash his hands from the time Schaefer left the room until the operation took place and that he did handle the cutting part of the knife, with which he operated, with unwashed hands, and used the knife without sterilizing or disin-fecting it.

Dr. Dippel further testified, after speaking about the infection coming from the use of an unsterilized knife, as follows: "Well, in a healthy gum I would blame it on the instrument.  I would expect the instrument caused it, if it was a healthy gum."

Dr. W. S. Flower, for the plaintiff, states that with the use of an unsterilized knife on a patient, the natural and probable result would be that blood poisoning would set in and would probably or ordinarily result in an in-fection; and that this is a matter of ordinary and com-mon knowledge in the profession.  This witness extracted the tooth in the right side of the lower jaw that had been drilled by the defendant and around which the abscess formed, and he pronounced it a sound tooth after it had been extracted.

In order to establish other probable causes which might have intervened to produce the infection, the appellant, on cross-examination of Dr. Dippel, brought out the following testimony:

"Q. And if that instrument was not infected, and a cut made I will say in a normal jaw—isn't any abrasion of the mouth very susceptible to infection? A. Well, dentists don't seem to consider it so. Q. I didn't ask you that. Do you consider it so? A. Well, from experience I wouldn't consider it so. Q. Isn't it a fact, as a matter of medicine—I mean as a matter of pathology, that any abrasion in the mouth is susceptible of receiving infection? A. It may receive the poison, but it doesn't seem to have effect upon it. The germs of the mouth are not made up of staphlococci and strepticocci as you would get from an abscess. Q. But you could get germs from the mouth other than the ones that are always there? A. As I say, if it had been preceded by an inflammation and swelling, you would suspect the pus there then, or coming on at least. Q. I am assuming that there was not any previously, for the purposes of this question. I am assuming there was none there before? A. Well, the chances then are very small. Q. But it is possible? A. It is possible, I have never seen it."

Dr. Flower on cross-examination, when asked if it was not possible for the infection to have been caused from germs taken in with food, water and air, said that he had never seen an abscess inoculate another abscess in the mouth, and that after some twenty years of practice in the extraction of a number of teeth and handling wounds of the mouth, he had never seen a case of infection contracted from food, water or air, coming direct from the extraction of a tooth and the wound that was left in the jaw after that extraction.

In the cross-examination of the plaintiff's witnesses in the effort to show the existence of equally probable causes for the injury other than the plaintiff's theory of

the case, some of the plaintiff's experts state that other probable causes might exist but the appellant bases his questions to secure these answers upon a set of facts sustaining his theory of the case. It is quite true, in relation to this chief point in dispute, that the defendant's experts, when the hypothetical question covering the plaintiff's theory of the case was asked, uniformly held that the infection could not be traced to the negligence of the operator with any degree of certainty and other equally probable causes could be found from which the abscess could have formed. Here was a plain contradiction. The weight of the evidence was seemingly with the defendant, but this was a matter for the jury under proper instructions from the trial court. This appeal raises only the question of entering a judgment n. o. v. Was there sufficient evidence establishing causal connection to submit the case to the jury? The appellate court cannot pass upon the credibility of the witnesses who testified at the trial, and from the record it would have been error on the part of the trial judge if he had instructed the jury, as requested by the plaintiff, that there was not sufficient evidence tending to show that the injury to the plaintiff was directly chargeable to defendant's negligence.

Much stress is laid on the time when the abscess developed, defendant contending that it should have appeared within twenty-four to forty-eight hours. It must be remembered that the plaintiff did appear at the defendant's office within twenty-four hours and complained of the pain in the jaw that had been lanced, and he was sent away and told by the defendant not to return unless it hurt very badly. Dr. Flower, who removed the tooth on October 5, was asked by plaintiff's counsel how long in his opinion the abscess was in the process of formation and his reply was "from a week to ten days or possibly a little longer," which would cover the period of time from the moment the operation took place until the tooth was removed. In the meantime, the

plaintiff went to the office of Dr. Chapman, a dentist, who found a fully developed abscess on the jaw.

Appellant takes exception to some of the testimony of the plaintiff, wherein he states that the persons present at the dentist's office on Monday, September 25, in addition to those already named, were two ladies. Appellant, however, overlooks the fact that later on he corrected this statement and says that the two ladies were in the office on the day following the operation when he went there. These contradictions, if any, were for the jury.

We realize the danger which may exist through any relaxation of the rule which requires causal connection to be proven to such a degree as to make its existence reasonably certain to the jury, and we likewise realize that to establish a rule which practically makes it impossible to prove this necessary element in the case, would be to place dentists beyond the reach of the law, though they had been guilty of the grossest of negligence. For illustration, defendant's counsel urges that germs could be taken from the air which would cause the abscess. We know of no means whereby the air that is taken into the body could be so purified as to eliminate the germs that counsel says it contains. He also urges the presence of germs always in the intestinal tract with like causal effect. As testified by one of the physicians, to make a mouth antiseptic it would be necessary to kill the patient in order to destroy the germs. In the case of Kohlmeyr v. Ohio Valley Water Co., decided by this court' in an opinion filed July 15, 1914, being an action to recover damages for death resulting from typhoid fever, the germs causing which being taken from water consumed as furnished by the defendant, a verdict against the company was sustained. The appellant in that case urged, without success, the presence of the germs in the air and in the intestinal tract as independent causes from which death could have resulted.

It is scarcely necessary to add that a physician who

operates on a patient for an infectious trouble and then, without sterilizing his hands or instruments, operates on another patient, is guilty of negligence.

Appellant cites the case of Friend v. Kramer, 236 Pa. 619, in support of his contention. In that case the plaintiff was not in a normal state of health, her jaw was not healthy and sound, and her jaw had been affected with diseases prior to her visit to the dentist's office. Her vitality was much weakened from a recent attack of typhoid fever, and her teeth were in such a state that she contemplated replacing them with false ones. The particular tooth extracted had been broken off by another dentist, "was decayed a little in the middle, . . . . had grown over." She did not show that the jaw-bone had been fractured, as claimed by the plaintiff. The difference between that case and the case at bar is apparent.

The assignments of error are overruled and the judgment of the court below is affirmed.